UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| v. | § CRIMINAL NO. 4:17-CR-000514 |
| | § |
| PAULO JORGE DA COSTA | § |
| CASQUEIRO MURTA | § |

GOVERNMENT'S OMNIBUS RESPONSE TO
DEFENDANT'S PRETRIAL MOTIONS

The United States hereby responds in opposition to Defendant Paulo Jorge Da Costa Casqueiro Murta's Motion to Dismiss Counts 13-14 and 18-19 of the Superseding Indictment based on the Statute of Limitations ("Motion to Dismiss") (DE 216) and Motion for Discovery and Inspection (DE 217). The Motion to Dismiss, which alleges that the Superseding Indictment charges crimes barred by the five-year statute of limitations applicable under 18 U.S.C. § 3282, should be denied because the government obtained an order under 18 U.S.C. § 3292 tolling the statute of limitations with respect to its investigation into offenses that gave rise to the charges against Defendant. Defendant's Motion for Discovery and Inspection should also be denied, as it either restates discovery obligations with which the United States continues to comply or calls for documents or action beyond the scope of Federal Rule of Criminal Procedure 16, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and the Jencks Act, 18 U.S.C. § 3500 *et seq*. The government has already made three discovery productions, which contain some of the specific documents mentioned in Defendant's motion, and it will continue to produce additional materials and fully comply with its discovery and ethical obligations.

PROCEDURAL BACKGROUND

On April 24, 2019, Defendant was charged in connection with the government's long-running investigation into bribery and corruption at Petróleos de Venezuela, S.A. ("PDVSA"), the Venezuelan

state-owned and -controlled oil company. At present, the government has announced charges against 28 individuals in connection with the investigation, 22 of whom have pleaded guilty.

### A. Relevant Facts & Procedural History

This case involves a corrupt scheme in which U.S.-based suppliers paid bribes to Venezuelan government officials in exchange for the PDVSA officials' assistance in ensuring that the U.S.-based suppliers were paid on outstanding invoices and continued to obtain new contracts with PDVSA. Those bribes were then laundered through various international bank accounts to conceal the nature, source, and ownership of the bribe proceeds. Given the nature of the bribery and money laundering scheme, some of the relevant evidence was located abroad, and the government transmitted requests for such evidence—documents and interviews—pursuant to mutual legal assistance treaties ("MLAT") in furtherance of its investigation. The government also obtained tolling orders for certain of these MLATs under 18 U.S.C. § 3292, as described below, including a tolling order dated January 12, 2017, in connection with an MLAT sent to Switzerland.

On December 10, 2015, Roberto Rincon Fernandez ("Rincon") and Abraham Shiera Bastidas ("Shiera") were indicted under seal on 18 counts of conspiracy to violate the Foreign Corrupt Practices Act ("FCPA") and to commit wire fraud, substantive violations of the FCPA, conspiracy to commit money laundering, and substantive money laundering. *See United States v. Roberto Enrique Rincon Fernandez and Abraham Jose Shiera Bastidas*, No. 4:15-cr-00654. The indictment alleged that Rincon and Shiera were paying bribes to PDVSA officials in charge of procurement in order to obtain improper business advantages—namely, additional contracts with PDVSA and the ability to get paid on outstanding invoices ahead of other PDVSA vendors. Shiera pleaded guilty in March 2016, and Rincon pleaded guilty in June 2016.

In August 2017, a grand jury sitting in the Southern District of Texas returned a 20-count indictment charging five former Venezuelan government officials with various money laundering and

FCPA offenses. *See United States v. Luis Carlos De Leon Perez, et al.*, No. 4:17-cr-00514. The indictment alleged that, in or about 2011, a group of then-current and former high-level officials of PDVSA and PDVSA subsidiaries (referred to in the indictment as the "management team") solicited several PDVSA vendors, including Rincon and Shiera, for bribes and kickbacks in exchange for assisting those vendors in connection with their PDVSA business. The indictment further alleged that the co-conspirators laundered the proceeds of the bribery scheme through a series of complex international financial transactions.

The "management team" included Luis Carlos De Leon Perez ("De Leon"), the former finance director for Electricidad de Caracas, a majority-owned subsidiary of PDVSA; Nervis Gerardo Villalobos Cardenas ("Villalobos"), the former Vice Minister of Energy for Venezuela; Cesar David Rincon Godoy ("Cesar Rincon"), the former General Manager of Bariven, PDVSA's procurement subsidiary; Alejandro Isturiz Chiesa ("Isturiz"), the former Assistant to the President of Bariven; and Rafael Ernesto Reiter Munoz ("Reiter"), the former Head of Security and Loss Prevention for PDVSA. In total, the indictment alleged that accounts controlled by Rincon and Shiera transferred over $27 million to a Swiss bank account, from which $27 million was then transferred to other accounts used in connection with the scheme.

The *De Leon et al.* case was assigned to this Court, and on April 19, 2018, co-defendant Cesar Rincon pleaded guilty to Count One of the indictment, which charged him with conspiring to commit money laundering, in violation of 18 U.S.C. § 1956(h). Similarly, on July 16, 2018, co-defendant Luis Carlos De Leon pleaded guilty to Counts One and Two, which charged him with conspiracy to commit money laundering, in violation of § 1956(h), and conspiracy to violate the FCPA, in violation of 18 U.S.C. § 371. Both individuals are pending sentencing before this Court.

### B. The Superseding Indictment

In April 2019, a superseding indictment that charged three additional individuals—Javier

Alvarado Ochoa ("Alvarado"), the former President of Bariven, Daisy Teresa Rafoi Bleuler ("Rafoi"), a Swiss banker, and Defendant—was returned under seal by a grand jury sitting in the Southern District of Texas. The superseding indictment was unsealed in September 2019. The charges against Defendant detail how he, Rafoi, Rincon, Shiera, and the members of the "management team" allegedly laundered and concealed the proceeds of their bribery scheme through the international financial system, including through banks in the United States and in Switzerland. The superseding indictment alleges that Rincon and Shiera transferred $25.9 million into accounts created by Defendant, which was then further transferred to members of the "management team."

The superseding indictment charged Defendant with one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count 13), one count of conspiracy to violate the FCPA, in violation of 18 U.S.C. § 371 (Count 14), and two counts of international promotional money laundering, in violation of 18 U.S.C. § 1956(a)(2)(A) (Counts 18 and 19). On April 29, 2019, an arrest warrant was issued for Defendant out of the Southern District of Texas. In May 2019, Defendant was arrested in Portugal and the government formally initiated extradition proceedings of Defendant from Portugal. Defendant appealed his extradition to multiple courts in Portugal and at least one court in the European Union. On June 2, 2021, after Defendant exhausted his appeals, he was again arrested by Portuguese authorities and detained pending his extradition.

On July 9, 2021, Defendant was flown from Portugal to the Southern District of Texas, where he had his initial appearance in this matter on July 12, 2021. The government produced a thumb drive of materials supporting the superseding indictment to Defendant at his initial appearance. On July 22 and July 26, 2021, United States Magistrate Judge Sam S. Sheldon held a detention hearing. The parties thereafter submitted supplemental briefing, and the matter is *sub judice*.

## ARGUMENT

**A. The Charges Against Defendant Were Timely Filed and his Motion to Dismiss Should be Denied.**

1. <u>Legal Standard</u>

The statute of limitations for the crimes charged in the Superseding Indictment is five years. *See* 18 U.S.C. § 3282. Pursuant to 18 U.S.C. § 3292, however, the government may suspend the statute of limitations during the pendency of an official request to a foreign country for evidence up to three years. Section 3292 of Title 18 provides, in relevant part:

> (a)(1) Upon application of the United States, filed before return of an indictment, indicating that evidence of an offense is in a foreign country, the district court before which a grand jury is impaneled to investigate the offense shall suspend the running of the statute of limitations for the offense if the court finds by a preponderance of the evidence that an official request has been made for such evidence and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country.
> \* \* \*
> (b) Except as provided in subsection (c) of this section, a period of suspension under this section shall begin on the date on which the official request is made and end on the date on which the foreign court or authority takes final action on the request.
> (c) The total of all periods of suspension under this section with respect to an offense—
> (1) shall not exceed three years; and
> (2) shall not extend a period within which a criminal case must be initiated for more than six months if all foreign authorities take final action before such period would expire without regard to this section.

Section 3292(d) defines an "official request" to include "a request under a treaty or convention" or a request by "an authority of the United States having criminal law enforcement responsibility" to an "authority of a foreign country." The statute of limitations is tolled beginning on the date the "official request" is made and ends "the date on which the foreign court or authority takes final action on the request." 18 U.S.C. § 3292(b); *United States v. Bischel*, 61 F.3d 1429, 1434 (9th Cir. 1995) ("The statute plainly contemplates that the starting point for tolling the limitations period is the official request for evidence, not the date the 3292 motion is made or granted."). A foreign country is not deemed to

have taken "final action" on an official request until it has made a "dispositive response" to the official request. *United States v. Meador*, 138 F.3d 986, 992 (5th Cir. 1998); *see also Bischel*, 61 F.3d at 1433.

The "official request" for evidence must only be "reasonably specific in order to elicit evidence of the alleged violations under investigation by the grand jury." *United States v. Neill*, 952 F. Supp. 831, 833 (D.D.C. 1996); *see also id.* at 832 ("[t]he statute does not . . . impose any specific requirements regarding the precise content of foreign evidence requests."). Additionally, Section 3292 is offense-specific, not person-specific, in that it is not necessary for the government to formally apply to suspend the statute of limitations as to a specific defendant. *See id.* at 833-34 (explaining that "the government has no control over who might be involved in the offense under investigation. A foreign evidence request for offenses under investigation may identify persons who are involved in the offenses, but who were previously unknown to the government."); *United States v. Hossein Kalani Afshari*, No. CR 01-209(C)-DOC, 2009 WL 1033798, at *2 (C.D. Cal. Apr. 14, 2009) ("[Section] 3292 is offense-specific, not person-specific, in that it suspends the statute as to an offense—it does not suspend the statute as to activities of an individual."); *United States v. Trainor*, 277 F. Supp. 2d 1278, 1283 (S.D. Fla. 2003) ("tolling under § 3292 is offense-specific, and not person-specific").

An application for an order pursuant to 18 U.S.C. § 3292 is appropriately made *ex parte* to the District Court in the District in which the grand jury investigation is taking place. *See United States v. Wilson*, 249 F.3d 366, 371 (5th Cir. 2001) ("[a]n application to toll the statute of limitations under § 3292 is a preindictment, ex parte proceeding"), *abrogated on other grounds by Whitfield v. United States,* 543 U.S. 209 (2005); *United States v. Lyttle*, *661* F.3d 220, 225 (2d Cir. 2012) ("[w]e therefore join the other circuits that have considered the question in holding that there is nothing improper about *ex parte* proceedings to determine whether to issue § 3292 orders").

6

2. <u>A Tolling Order Was Entered and the Charges Against Defendant Were Timely Filed.</u>

The Motion to Dismiss asserts that the statute of limitations ran with respect to Count 13 on May 15, 2018, Count 14 on March 18, 2018, Count 18 on March 25, 2018, and Count 19 on May 8, 2018. DE 216 at 5. It also asserts that there was "never" a valid tolling agreement entered between the parties, and argues that because there was no "waiver" by Defendant, the statute of limitations for the charges in the superseding indictment expired before the superseding indictment was returned. *Id.* These arguments fail because the statute of limitations for the charges in the superseding indictment were properly tolled by an *ex parte* tolling order entered by United States District Judge Simeon Timothy Lake III.[1]

The government submitted an MLAT to Switzerland on December 15, 2014, and Judge Lake signed a tolling order suspending the statute of limitations on September 21, 2015, with respect to the government's investigation of Rincon and Shiera, among others, for offenses relating to: the FCPA, 15 U.S.C. § 78dd-1. *et seq.*; conspiracy, 18 U.S.C. § 371; money laundering, 18 US.C. § 1956; and conspiracy to commit money laundering, 18 U.S.C. 1956(h). As the government's investigation progressed, it submitted a supplemental MLAT to Switzerland on November 7, 2016, requesting additional records related to the investigation of Rincon, Shiera, and others, and submitted another application to toll the statute of limitations. Judge Lake signed a tolling order suspending the statute of limitations on January 12, 2017, with respect to the government's investigation of Rincon, Shiera,

---

[1] Defendant acknowledges that the government advised him that a valid order tolling the statute of limitations pursuant to 18 U.S.C. § 3292 had been obtained, *see* Motion to Dismiss at n.3, but nevertheless argues for dismissal based on a misplaced and incorrect argument that because the government did not seek a tolling agreement from Defendant, the charges against Defendant are time-barred. Specifically, the government advised Defendant by email dated August 10, 2021, that since the relevant tolling order was under seal, the government would need to file a motions for limited unsealing before producing those materials to Defendant in discovery. The government has since obtained orders granting the limited unsealing for multiple MLATs and has produced the relevant MLAT and tolling order to Defendant.

Villalobos, among others, for offenses relating to, among others: the FCPA, 15 U.S.C. § 78dd-1. *et seq.*; conspiracy, 18 U.S.C. § 371; money laundering, 18 US.C. § 1956; and conspiracy to commit money laundering, 18 U.S.C. 1956(h). (Attached hereto as Exhibit 1.) The government continued to receive materials from the Swiss Authorities in response to this MLAT through at least August 20, 2018, 651 days after the supplemental MLAT was sent on November 7, 2016.

The *ex parte* order relating to the government's November 2016 MLAT, therefore, tolled the statute of limitations 651 days, extending the statute into 2020. Count 18, for example, charged a money laundering transaction occurring on March 25, 2013. As a result of the tolling order, the government had until January 5, 2020 to charge Defendant. Counts 13, 14 and 19 allege actions taken by Defendant into March and May 2013; as a result of the tolling order, the government similarly had until January and March 2020 to charge Defendant for those offenses. The superseding indictment was returned on April 24, 2019, well before the statute of limitations ran. As a result of the *ex parte* order tolling the statute of limitations, each of the charges against Defendant were timely filed. *See United States v. Khoury*, No. 4:08-CR-0763, 2019 WL 6687715, at *5 (S.D. Tex., Dec. 19, 2019) (denying defendant's renewed motion to dismiss indictment finding that pursuant to 18 U.S.C. § 3292, the statute of limitations was suspended the date the government requested foreign aid).

### B. Defendant's Motion for Discovery and Inspection Should be Denied as Moot.

This Court should deny Defendant's Motion for Discovery and Inspection. The government agrees that it is required to provide Defendant the items for discovery and inspection to which he is entitled in accordance with Rule 16 of the Federal Rules of Criminal Procedure; the Jencks Act, 18 U.S.C. § 3500 *et seq.*; *Brady v. Maryland*, 373 U.S. 83 (1963); and *Giglio v. United States*, 405 U.S. 150 (1972). The United States opposes any request for pretrial discovery that exceeds those established requirements.

The United States also notes that in accordance with the protective order entered by this Court on August 2, 2021, it has already made three productions of discovery materials to Defendant, including records supporting the allegations in the Superseding Indictment, hundreds of thousands of records provided by Rincon and Shiera, statements by Defendant, and certain MLATs and tolling orders, as requested by Defendant. To date, the government has produced approximately 3,334,579 pages of materials to Defendant. Even before the protective order was entered in this case, the government provided Defendant with a flash drive of documents supporting the superseding indictment at his initial appearance, and with an interview report relating to his March 2018 interview in Portugal.

The United States provides specific responses to each of Defendant's motions as follows:

1. <u>"Defendant's statements and circumstances surrounding the Portuguese Interview." DE 217 at 1.</u>

Defendant requests U.S.-created interview reports related to an interview of Murta conducted in Portugal in March 2018. In early March 2018, the government sent an MLAT to Portugal requesting an interview of the Defendant and two other witnesses. Defendant's interview was conducted by agents with Homeland Security Investigations ("HSI") and an interview report was prepared by Portuguese authorities. HSI did not prepare an additional interview report.

As the government advised Defendant on August 10 shortly before he filed the instant motion, the government has already produced the only interview report in its possession of that interview. On August 20, 2021, the government also produced the MLAT it transmitted to the Portuguese authorities, through which it requested an interview of Defendant. Defendant's additional requests seeking, among other things, correspondence between the United States and Portugal or Spain, rough notes by foreign agents, and correspondence between the government and Defendant's Portuguese lawyer, exceed Rule 16's requirements and the government's established discovery obligations and therefore, should be denied.

2. "Brady and Giglio Materials, Including Evidence of Circumstances Surrounding the Portuguese Interview." DE 217 at 4.

Defendant further requests all information relating to the circumstances surrounding the March 2018 interview of Defendant in Portugal, in compliance with the government's *Brady* and *Giglio* obligations. As the government noted above, it has already produced to the Defendant the only interview report in its possession of that interview, as well as the MLAT request submitted to Portuguese authorities requesting the interview. The government is currently unaware of any *Brady* or *Giglio* material related the statements made by Defendant during the interview in March 2018. The government is aware of its discovery obligations, and will continue to comply with those obligations. If Defendant seeks the production of any specific document or set of documents, the government will coordinate with counsel to learn whether: (a) the document exists; (b) it is in the possession of the government; and (c) whether it is subject to disclosure.

3. "Foreign Evidence." DE 217 at 4.

Defendant requests that the government produce information pertaining to attempts to obtain foreign evidence in this case. This request should be denied as moot. The government has begun producing documents responsive to this request, including two MLATs transmitted to Switzerland, applications and orders to toll the statute of limitations, and an MLAT submitted to Portugal requesting an interview of Defendant. The government will produce additional materials responsive to this request in the coming weeks.

4. "Witness Statements of Cooperating and Other Witnesses the Government Intends to Call at Trial." DE 217 at 4.

Defendant requests that this Court invoke "the interests of justice and judicial economy" and rely on its inherent authority to order "by a date certain" the statements of any fact witness the government intends to call at trial. DE 217 at 4-5. The government intends to produce numerous

witness reports, including of cooperating witnesses who may testify at trial, well in advance of trial, in accordance with its *Brady/Giglio* and Jencks Act obligations.

However, to the extent the Defendant's request asks the Court to compel early production of Jencks Act material, the government opposes and urges the Court to deny those requests. *See United States v. Causey*, 356 F. Supp. 2d 681, 698-99 (S.D. Tex. 2005) (collecting cases and citing *United States v. Campagnuolo*, 592 F.2d 852, 858 (5th Cir. 1979), which held that a pretrial discovery order was invalid to the extent that it allowed discovery beyond the limitations of the Jencks Act)).

Simply put, Jencks Act materials, as dictated by statute, are required to be turned over after the witness in question has testified on direct examination. *See* 18 U.S.C. § 3500 (witness statement need not be produced prior to completion of witness's direct examination); *see also United States v. Coppa*, 267 F.3d 132, 145 n.10 (2d Cir. 2001) ("The Jencks Act was enacted to clarify that the Government need not disclose such statements to the defense until after the Government witness has testified against the defendant on direct examination in open court."). The defendant therefore is not entitled to supersede the clear directive of a congressional act and compel the government to perform a task in direct contravention of that federal statute. *See United States v. Tarantino*, 846 F.2d 1384, 1414 (D.C. Cir. 1998) ("congressional determination" as embodied in Jencks Act "is not to be disregarded by the courts").

As noted above, the government will produce reports, records, and statements relating to its potential witnesses' testimony in the coming weeks, and certainly intends to do so well before those witnesses testify at trial. Because of those and other disclosures already made by the government, any concerns or purported prejudice the defendant may claim regarding Jencks Act material are without merit, thereby obviating the need for any court order mandating early production. *Cf. United States v. Bencs*, 28 F.3d 555, 561 (6th Cir. 1994) (rejecting defendant's claim that Jencks Act production during trial hindered his trial preparation).

     5. <u>Miscellaneous Requests. DE 217 at 5-6.</u>

Defendant further seeks a copy of Defendant's criminal record, notice of the government's intent to admit evidence under Rule 404(b), and the government's compliance with Rule 16. The government intends to fully comply with its discovery obligations and has produced, and will continue to produce, any materials that are covered under Rule 16. Further, the government intends to fully comply with the Rules of Evidence, and will provide notice of any evidence it seeks to admit pursuant to Rule 404(b).

## **CONCLUSION**

Defendant's Motion to Dismiss should be denied because the government obtained an order under 18 U.S.C. § 3292 tolling the statute of limitations with respect to its investigation that gave rise to the charges against Defendant

With respect to the Motion for Discovery and Inspection, the United States has complied, and will continue to comply, with its discovery obligations under Rule 16, the Jencks Act, and *Brady* and *Giglio*. The government submits that, given the productions already made to Defendant and the responsibilities already imposed by law on the government, no court order is required to compel or guarantee the necessary disclosures. Moreover, to the extent Defendant requests materials beyond those mandated by law, the government opposes those requests and asks that the Court deny them.

Respectfully submitted,

| | |
|---|---|
| JOSEPH S. BEEMSTERBOER | JENNIFER LOWERY |
| ACTING CHIEF | ACTING U. S. ATTORNEY |
| Fraud Section | Southern District of Texas |
| Criminal Division | |
| United States Department of Justice | |

   */s/ Sonali D. Patel*               */s/ Robert S. Johnson*

DREW BRADYLYONS            JOHN P. PEARSON
MARIHUG P. CEDEÑO          ROBERT S. JOHNSON
TRIAL ATTORNEYS               ASSISTANT UNITED STATES
SONALI D. PATEL                  ATTORNEYS
ASSISTANT CHIEF

Fraud Section, Criminal Division      U.S. Attorney's Office
U.S. Department of Justice            Southern District of Texas
1400 New York Avenue, N.W.       1000 Louisiana, Ste. 2300
Washington, D.C. 20530              Houston, TX 77002
Tel: (202) 514-1106                     Tel: (713) 567-9385

## CERTIFICATE OF SERVICE

I hereby certify that, on August 22, 2021, I filed the foregoing motion with the Clerk of the Court using the ECF/CM system for filing and service on all counsel of record.

/s/ *Sonali D. Patel*
Sonali D. Patel
Assistant Chief
Fraud Section, Criminal Division
U.S. Department of Justice