IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| vs. | § | Case No. H-17-514-S |
| | § | |
| | § | |
| NERVIS G. VILLALOBOS-CÁRDENAS, | § | |
| ALEJANDRO ISTÚRIZ-CHIESA, | § | |
| RAFAEL E. REITER-MUÑOZ, | § | |
| JAVIER ALVARADO-OCHOA, | § | |
| DAISY T. RAFOI-BLEULER & | § | |
| PAULO J.D.C. CASQUEIRO-MURTA | § | |

---

**DEFENDANT JAVIER ALVARADO-OCHOA'S MOTION FOR RECONSIDERATION
AND IN THE ALTERNATIVE FOR CERTIFICATION OF INTERLOCUTORY
APPEAL**

---

# **TABLE OF CONTENTS**

TABLE OF CONTENTS…………………………………………………………………..i

TABLE OF AUTHORITIES………………………………………….………………...iv

PRELIMINARY STATEMENT………………………………………………………..1

ARGUMENT……………………………………………………………………………...2

I.      THE INDICTMENT OF ALVARADO FAILS FOR LACK OF JURISDICTION……2

      A.      THE FCPA DOES NOT APPLY TO ALVARADO…………….………...2

            1.  Summary of the Argument………...…………………………………..2

            2.  Detailed Discussion………………………………………………….4

      B.      CONGRESS' SUBSEQUENT FEPA ENACTMENT CONFIRMS ALVARADO'S FCPA EXCEPTION ARGUMENT……...………………….9

      C.      THIS COURT MAY ADDRESS THE QUESTIONS *BLEULER* LEFT OPEN…………………………………………………………14

            1.  Grounds of Judge Hoyt's Order……………………...………...14

            2.  Alavarado is Not Murta………………………………………….16

                a.      Alvarado is Situated Differently from Murta……………..…16

                b.      Unlike Alvarado, Murta Was Alleged to be an "Agent" Under the FCPA (Relevant to Counts 1, 3, 13, and 15-17)…………..17

            3.  The Fifth Circuit's Reservation of the Analysis of the AMLA's Conspiracy Section (Relevant to Counts 1 and 3)......................................18

            4.  *Bleuler* Does Not Apply to One Situated as Alvarado (Relevant to all Counts)………………………………………...…………………19

            5.  *Bleuler* and the Cases Cites by The Fifth Circuit and Judge Hoyt are Inapposite…………………………….…………………………21

            6.  The Fifth Circuit in *Bleuler* Invited Judge Hoyt to Decide "In the First Instance"………………………………………………..…..21

            7.  *Bleuler* is not the Law of the Case as to Alvarado………………………..22

D.     CERTIFICATION REQUEST AS TO JURISDICTIONAL ISSUES...........23

    1.  Proposed Certification Questions.............................................23

    2.  Standards Governing Certification............................................23

    3.  Both Questions Meet the Certification Standards............................24

        a.  Both Questions are Controlling Questions of Law.....................24

        b.  There is a Sufficiently Substantial Difference of Opinion on
          *Bleuler's* Meaning.........................................................26

        c.  An Immediate Appeal Would Materially Advance the Litigation.......26

II.  PRINCIPLES OF INTERNATIONAL COMITY AND ABSTENTION CALL
     FOR DISMISSAL..........................................................................27

    A.     ANALYSIS OF ABSTENTION AND COMITY CASE LAW.................28

    1.  The Abuse of Discretion Standard...........................................28

    2.  Special Circumstances Warrant Greater Deference to Comity Principles...29

    3.  Special Circumstances Require Deference to Foreign Criminal Cases......30

    B.     APPLICATION OF CASE LAW TO FACTS IN THIS CASE.................33

    1.  Deference to Spain's Sovereignty Requires Dismissal......................34

    2.  Consideration of Spain's Core Policy Prerogatives Mandates
       Dismissal........................................................................34

    3.  Deference to First Filed, Most Advanced Litigation in an Adequate
       and Available Forum Compels Dismissal ....................................38

    4.  Parallelism Between the Two Cases Counsels Dismissal....................40

    5.  Hardship to the Respective Courts and the Efficient Use of Judicial
       Resources Strongly Counsels Dismissal......................................41

    6.  Considerations of Due Process and Fundamental Fairness to Alvarado
       Mandate Dismissal.............................................................43

    7.  Consideration of Res Judicata and Collateral Estoppel Complexities
       Strongly Favor Dismissal......................................................44

       C.       DISMISSAL RATHER THAN A STAY IS THE SOLUTION HERE……..…46

       D.       IF THE COURT DOES NOT RULE IN ALVARADO'S FAVOR ON
                   INTERNATIONAL COMITY, IT SHOULD CERTIFY QUESTION
                   3 TO THE FIFTH CIRCUIT…………………………………………………48

CONCLUSION……………………………………………………………………………………..49

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                                      <u>Page(s)</u>

*800537 Ontario, Inc. v. World Imports U.S.A. Inc.,*
145 F. Supp. 2d 288, 290 (W.D.N.Y. 2001)………………………………….……………31

*Adams v. Merck & Co., Inc.,* 353 Fed.App'x. 960, 962 (5th Cir.2009)…………………………39

*African Methodist Episcopal Church v. Lucien,* 756 F.3d 788, 798 (5th Cir. 2014)……………..29

*Ahrenholz v. Bd. of Trustees of Univ. of Illinois,* 219 F.3d 674, 676–77 (7th Cir. 2000)………...25

*Akerblom v. Ezra Holdings Ltd.,*
No. 4:11-CV-00694, 2012 WL 464917, at *3 (S.D. Tex. Feb. 13, 2012)…………………...........39

*Alcalá v. Texas Webb County,* 625 F. Supp. 2d 391, 396 (S.D. Tex. 2009)…………………....…42

*Alpha/Omega Ins. Servs., Inc. v. Prudential Ins. Co. of Am.,*
272 F.3d 276, 279 (5th Cir. 2001)………………………………………………………………22

*Arizona v. California,* 460 U.S. 605, 618 (1983)…………………………………………….....…22

*Austin v. Kroger Texas, L.P.,* 864 F.3d 326, 336 (5th Cir. 2017)……………………………..…….1

*Burford v. Sun Oil Co.,* 319 U.S. 315 (1943)…………………………………………….……28

*Cannon v. Univ. of Chicago,* 441 U.S. 677, 696-97 (1979)………………………………………13

*Casey v. Department of State,* 980 F.2d 1472, 1477 (D.C. Cir. 1992)……………………………36

*Caspian Invs., Ltd. v. Vicom Holdings, Ltd.,* 770 F. Supp. 880, 884 (S.D.N.Y. 1991)……………47

*Cabal v. Brennan,* 853 F.3d 763, 766 n. 3 (5th Cir. 2017)…………………………………………1

*Clientron Corp. v. Devon IT, Inc.,*
Civil Action No. 13-05634, 2014 WL 940406, at *8 (E.D. Pa. Mar. 10, 2014)…………………33

*Cobell v. Jewell,* 802 F.3d 12, 25-26 (D.C. Cir. 2015)………………………………………..…1

*Colorado River Water Cons. Dist. v. U.S.,* 424 U.S. 800, 813-14 (1976)..........................28, 32, 33

*Compass Bank v. Werner,*
No. CV L-12-37, 2013 WL 12190204, at *5 (S.D. Tex. Apr. 2, 2013)……………………………32

*Continental Time Corp. v. Swiss Credit Bank,* 543 F. Supp. 408, 410 (S.D.N.Y. 1982)…………47

*Copia Commc'ns, LLC v. AMResorts, L.P.,* 812 F.3d 1 (1st Cir. 2016)………………..………33

*Dewsnup v. Timm,* 502 U.S. 410, 419 (1992)……………………………………….…..…...13

*DTEX, LLC v. BBVA Bancomer, S.A.,* 508 F.3d 785, 804 (5th Cir. 2007)…………………….31, 39

*Ducre v. Exec. Officers of Halter Marine, Inc.,* 752 F.2d 976, 984 (5th Cir. 1985)…………..….24

*Easom v. US Well Servs.,* 527 F. Supp. 3d 898, 917 (S.D. Tex. 2021)……………………….…24

*Emil v. Hanley,* 318 U.S. 515, 521 (1943)……………………………………………………..13

*Empresa Líneas Marítimas Argentinas, S.A. v. Schichau–Unterweser, A.G.,*
955 F.2d 368, 375 (5th Cir.1992)…………………………………………………………………42

*Escobedo v. ACE Gathering, Inc.,*
Civil Action No. H-22-538, 2023 WL 5511199 at *1 (S.D. Tex. Aug. 25, 2023)……………....23

*Filártiga v. Peña–Irala,* 630 F.2d 876, 890 (2d Cir.1980)…………………………………….35

*Fishman Jackson PLLC v. Israely,* 180 F. Supp. 3d 476, 485-86 (N.D. Tex. 2016)……………32

*Forsyth v. Kleindienst,* 599 F.2d 1203 (3d Cir.1979)…………………………………………27

*Fortaner v. Boeing Co.,* 504 F. App'x 573 (9th Cir. 2013)……………………………………39

*Francis v. Henderson,* 425 U.S. 536, 541–42 (1976)…………………………………….31, 35

*Frhueb, Inc. v. De Freitas Abdala,*
21-CV-7395, 2022 WL 7150242 (S.D.N.Y. Sep. 30, 2022)………………………………32, 38

*Galvan v. Press,* 347 U.S. 522 (1954)…………………………………………………………44

*Gebardi v. United States,* 287 U.S. 112 (1932)……………………………………………4, 18

*Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293 (1943)………………………….29

*Gross v. German Found. Indus. Initiative,* 456 F.3d 363, 392 (3d Cir. 2006)………………….34

*Gulf Oil Corp. v. Gilbert,* 330 U.S. 501 (1947)………………………………………………42

*Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 817 (1993)………………………………47

*Hilton v. Guyot,* 159 U.S. 113, 205-06 (1895)…………………………………………………45

v

*Huertas v. Kingdom of Spain,*
Civil Action No. 05-627 (RWRAK), 2006 WL 785302 at *5, (D.D.C. Mar. 27, 2006)............39

*Huffman v. Pursue,* Ltd., 420 U.S. 592 (1975)........................................................................29

*In re Air Crash at Madrid, Spain,* 893 F. Supp. 2d 1020, 1030 (C.D. Cal. 2011)...................39

*In re Ford Motor Co.,* 591 F.3d 406, 412 (5th Cir. 2009)..........................................................40

*In re Picard,* 917 F.3d 85, 100-01 (2d Cir. 2019)......................................................................47

*Intelligender, LLC v. Soriano,* 2011 WL 903342 at * 8 (E.D. Tex., March 15, 2011)..............32

*International Transactions, Ltd. v. Embotelladora Agral Regiomontana, SA de CV,*
347 F.3d 589, 594 (5th Cir. 2003)..............................................................................................45

*Juidice v. Vail,* 430 U.S. 327 (1977).........................................................................................29

*Keating v. Office of Thrift Supervision,* 45 F.3d 322, 324 (9th Cir. 1995)...............................28

*Keating v. Finch Shipping Co., Ltd.,* 265 F.3d 258, 268 (5th Cir. 2001)...................................31

*Kinsella v. Krueger,* 351 U.S. 470, 479 (1956).........................................................................37

*Landis v. North American Co.,* 299 U.S. 248 (1936).................................................................31

*León v. Millon Air, Inc.,* 251 F.3d 1305, 1311 (11th Cir. 2001)...............................................39

*Lexington Ins. Co. v. Forrest,* 263 F. Supp. 2d 986, 1002-03 n.13 (E.D. Pa. 2003).................33

*Lindsey v. Lessee of Miller,* 31 U.S. Pet. 666, 669, 8 L. Ed. 538 (1832)..................................13

*Linton v. Shell Oil Co.,* 563 F.3d 556, 558 (5th Cir. 2009).......................................................24

*Louisiana Power & Light Co. v. Thibodaux,* 360 U.S. 25, 28 (1959).......................................29

*Marnavi Splendor GMBH & Co. KG v. Alstom Power Conv., Inc.,*
706 F. Supp. 2d 749, 757............................................................................................................42

*McCollum v. Livingston,*
No. 4:14-CV-3253, 2017 WL 2215627, at *3 (S.D. Tex. May 19, 2017)...................................25

*Medical Center Pharmacy v. Holder,* 634 F.3d 830, 834 (5th Cir. 2011).................................22

*Melgares v. Sikorsky Aircraft Corp.,* 613 F. Supp. 2d 231 (D. Conn. 2009)............................39

*Mich. Cmty. Servs., Inc. v. NLRB,* 309 F.3d 348, 356 (6th Cir.2002)……………………..………35

*Mount Sinai Hosp. v. Weinberger,* 517 F.2d 329, 343 (5th Cir. 1975)…………………………….14

*Mujica v. Airscan Inc.,* 771 F.3d 580, 589 (9th Cir. 2014)…………………………..……...….33, 47

*Munaf v. Geren,* 553 U.S. 674, 693 (2008)…………………………….………………….35, 36, 37

*National Union Fire Ins. Co. of Pittsburgh, PA v. Kozeny,*
115 F. Supp. 2d 1243, 1247-48 (D. Colo. 2000)……………………………………….……….41

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.,*
673 F.3d 84, 100 (2d Cir. 2012)………………………………………………………………...32

*Nielsen v. Preap,* 139 S. Ct. 954, 969 (2019)…………………………………………………...13

*Noble Drilling Servs. v. Noble Denton Marine, Inc.,*
No. 4:09-CV-3074, 2010 WL 1790202, at * 4 (S.D.T.X. May 4, 2010)….……………………….32

*Novasparks SA v. Enyxfpga,* 344 F.Supp.3d 666, 677-78 (S.D.N.Y. 2018)……………..……...32

*Ontario, Inc. v. World Imports U.S.A. Inc.,*
145 F. Supp. 2d 288, 290-91 (W.D.N.Y. 2001)……………………………………....31, 38

*Overseas Inns S.A. P.A. v. U.S.,* 911 F.2d 1146, 1148 (5th Cir. 1990)…………………………….45

*Pasquantino v. United States,* 544 U.S. 349, 362 (2005)…………………………………….32, 36

*PCL Civil Constructors, Inc. v. Arch Ins. Co.,* 979 F.3d 1070, 1073 (5th Cir. 2020)………………31

*Pennsylvania v. Williams,* 294 U.S. 176 (1935)…………………………………………………..29

*Pérez & Compañía (Cataluña), S.A. v. M/V Mexico I,* 826 F.2d 1449, 1453 (5th Cir.1987)….42, 43

*Pesquera v. Pérez,*
Case No. 20-CV-02128-LHK, 2021 WL 254193 (N.D. Cal. Jan. 26, 2021)………………………39

*Phila. Gear Corp. v. Phila. Gear de Mexico,* 44 F.3d 187, 191 (3d Cir. 1994)…………………...34

*Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254 n.22 (1981)……………………………………..39

*Posner v. Essex Ins. Co., Ltd.,* 178 F.3d 1209, 1223 (11th Cir. 1999)…………………………….33

*Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru,* 109 F.3d 850, 854 (2d Cir.1997)………34

*Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716–17 (1996)…………………………………29

*Railroad Comm'n of Tex. v. Pullman Co.,* 312 U.S. 496 (1941)…………………………………29

*Reese v. BP Expl. (Alaska) Inc.,* 643 F.3d 681, 688 (9th Cir. 2011)………………………………26

*Reid v. Covert,* 354 U.S. 1, 15, n. 29 (1957)………………………………………………………..37

*Releford v. City of Houston,*
Civil Action No. 4:14-CV-02810, 2016 WL 7051662, at *2 (S.D. Tex. Dec. 5, 2016)…………..24

*Rico v. Flores,* 481 F.3d 234, 238 (5th Cir. 2007)……………………………………………………23

*RJR Nabisco, Inc. v. European Community,* 579 U.S. 325 (2016)…………………………………4

*Rodríguez v. City of Corpus Christi,*
No. 2:21-CV-00297, 2023 WL 6371029, at *2 (S.D. Tex. June 10, 2023)………………………..25

*Royal and Sun Alliance Ins. Co. of Canada v. Century Intern. Arms, Inc.,*
466 F.3d 88, 94 (2nd Cir. 2006)……………………………………………………..…………30, 32

*S & D Trading Academy, LLC v. AAFIS, Inc.,* 494 F. Supp. 2d 558, 570 (S.D. Tex. 2007)……...31

*Sánchez-Llamas v. Oregon,* 548 U.S. 331, 350 (2006)………………………………………………44

*S.E.C. v. Credit Bancorp, Ltd.,* 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000)………………………25

*Sindona v. Grant,* 619 F.2d 167, 177 (2d Cir. 1980)…………………………………………………46

*Sosa v. Álvarez–Machain,* 542 U.S. 692, 731–33 (2004)……………………………………………35

*Stewart v. W. Heritage Ins. Co.,* 438 F.3d 488, 491 (5th Cir. 2006)………………………………29

*Tjontveit v. Den Norske Bank ASA,* 997 F.Supp. 799, 808 (S.D.Tex.1998)………………………42

*Ungaro–Benages v. Dresdner Bank AG,* 379 F.3d, 1227, 1238-39 (11th Cir. 2004)…………46, 47

*Vance v. Rumsfeld,* 701 F.3d 193, 199 (7th Cir. 2012)………………………………………………36

*W. Gulf Mar. Ass'n v. Ila Deep Sea Local 24,* 751 F.2d 721, 729 (5th Cir. 1985)…………………28

*Wallace v. Kato,* 549 U.S. 384, 393-94 (2007)………………………………………………………28

*Walker v. Wilburn,*
Civil Action No. 3:13-CV-4896-D, 2015 WL 5873392 at *3 (N.D. Tex. Oct. 5, 2015)………28, 39

*Wilson v. Girard,* 354 U.S. 524, 529 (1957)………………………………………………30, 36, 37

*Wong Wing v. United States,* 163 U. S. 228, 238 (1896)……………………………………………44

*Younger v. Harris,* 401 U.S. 37, 43-54 (1971)……………………………….……………29, 31

*Zermeno v. McDonnell Douglas Corp.,* 246 F.Supp.2d 646, 659 (S.D.Tex. 2003)……………..39

*Zybertech Constr. Software Servs. Ltd v. Shenner,*
Civil Action No. 3:21-CV-2937-N, 2023 WL 1806019, at *3 (N.D. Tex. Feb. 7, 2023)…………..47

*United States v. Bleuler,*
60 F.4th 1007 (5th Cir. 2023)……………………………………….…1—3, 6, 9, 14—23, 26

*United States v. Brewer,* 60 F.3d 1142, 1143 (5th Cir. 1995)…………………………….....….1

*United States v. Castillo,* 179 F.3d 321, 326 (5th Cir. 1999)……………………………………22

*United States v. Castle,* 925 F.2d 831, 834 (5th Cir. 1991)………..……....3—5, 7, 9, 14, 18, 21, 26

*United States v. Composite State Bd. of Med. Examiners, State of Ga.,*
656 F.2d 131, 136 (5th Cir. 1981)……………………………………………………………31, 32

*United States v. Cook,* 670 F.2d 46, 48 (5th Cir.)……………………………………………1

*United States v. González,* 547 F.Supp. 3d 1083, 1116, n.13 (D. New Mexico 2021)…………13

*United States v. Hoskins,* 902 F.3d 69 (2d Cir. 2018)………………...……….……4, 19, 21, 26

*United States v. Husband R.,* 453 F.2d 1054, 1058 (5th Cir. 1971)………………………………44

*United States v. Iossifov,* 45 F.4th 899, 912-14 (6th Cir. 2022)………………...……….…15, 20

*United States v. Kashamu,* 656 F.3d 679, 681 (7th Cir. 2011)……………………….…44—46

*United States v. Katz,* 271 U.S. 354, 357 (1926)…………………………………….…7

*United States v. Kay,* 395 F.3d 738, 746 (5th Cir. 2004)………………...……………..…5, 6, 14

*United States v. Kordel,* 397 U.S. 1, 12 n. 27 (1970)……………………………….………28, 30

*United States v. Kun Yun Jho,* 534 F.3d 398, 405 (5th Cir. 2008)…………………….............30

*United States v. Lawrence,* 727 F.3d 386, 394 (5th Cir. 2013)…………………………………36

*United States v. Lazarenko,*
No. 06-10592, 2001 WL 37131525, at *3 …………………………………………………7

*United States v. Lee,* 358 F.3d 315, 320 (5th Cir. 2004)………………………………….…..22

*United States v. Lewis,* 921 F.2d 563, 564 (5th Cir. 1991)……………………………………....1

*United States v. Lot 5, Fox Grove, Alachua County, Fla.,* 23 F.3d 359, 364 (11th Cir. 1994)…….30

*United States v. Morton,* 314 F. Supp. 2d 509, 514 (D. Md. 2004)……………………………35

*United States v. Nippon Paper Indus. Co., Ltd.,* 109 F.3d 1, 8 (1st Cir. 1997)…………………34

*United States v. Ojedokun,*
16 F.4th 1091, 1106 (4th Cir. 2021, cert. denied, 142 S.Ct. 2780 (2022))……………..…15, 20, 21

*United States v. Rafoi,* 59 F.4th 718 (5th Cir. 2023)…….……………………..…….…..……15

*United States v. Rafoi,* 60 F.4th 982, 995 (5th Cir. 2023)……………………………………16

*United States v. Scott,* 524 F.2d 465, 467 (5th Cir. 1975)………………………………….…1

*United States v. Stein,*
Crim. A. No. 93-375, 1994 WL 285020, at *4 (E.D. La. June 23, 1994)………………………20

**Statutes**

Foreign Extortion Prevention Act of 2023, Pub. L. No. 118-31, div. E, title LI, Section 5101, Dec. 22, 2023, 137 Stat. 931……………………………………………….…...1-3, 5-6, 9-14, 23

Anti-Money Laundering Act, 18 U.S.C. 1956………….……....3, 4, 7, 9-11, 14-15, 18-23, 48

Foreign Corrupt Practices Act,
15 U.S.C. §§ 78dd, et seq.………………………...……………………..1, 2, 3, 4, *passim*

18 U.S.C. § 2………………………………………………………………………8

18 U.S.C. § 201…………………………………………………………………1, 10, 11

18 U.S.C. § 371………………………………………………………………….…...7

28 U.S.C. § 1292(b)…………………………………………………………23, 26, 49

**<u>Other</u>**

Hearing on Countering Threats Posed by Nation-State Actors in Latin America to U.S.
Homeland Security Before the Subcomm. on Counterterrorism, Law Enforcement,
and Intelligence of the H. Comm. on Homeland Security,
118th Cong. 1st Sess. (2023) (Serial No. 118–18) at 1……………………..…………………..10

H.R. Rep. No. 95-640, at 4-5 (1977); S.Rep. No. 95-114, at 3-4 (1977)
*reprinted in* 1977 U.S.C.C.A.N. 4098, 4100-01……………...…………..…………………......6

*Interlocutory Appeals in the Federal Courts Under 28 U.S.C. § 1292(b),*
88 Harv. L. Rev. 607, 623 (1975)……………………………………………..………..25

John C. Nagel, *Note, Replacing the Crazy Quilt of Interlocutory Appeals*
*Jurisprudence with Discretionary Review,* 44 Duke L.J. 200, 212 (1994)………………………..25

Treaty on Extradition Between the United States and Spain,
22 U.S.T. 737, T.I.A.S. 7136 (1971) (Article V(A)(1))…………………………………………...46

16 Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice
and Procedure, § 3930 at 426 & n.25 (2d ed. 1996 & Supp. 2005)………………………………..25

## PRELIMINARY STATEMENT

Defendant Javier Alvarado Ochoa ("Alvarado") submits this Motion for Reconsideration[1] of Judge Hoyt's October 10, 2023 Order ("Order") denying Alvarado's Motion to Dismiss. In the alternative, Alvarado moves for Certification of Interlocutory Appeal to the Fifth Circuit Court of Appeals ("Fifth Circuit").

Alvarado based his initial Motion to Dismiss on the following: (a) at the time of his indictment (the "Indictment") he was a foreign public official not physically present in the United States ("U.S.") during the alleged scheme's perpetration, and, so, was not a "person" covered by the Foreign Corrupt Practices Act, 15 U.S.C. §§ 78dd, *et. seq*. ("FCPA"); and (b) neither the FCPA nor any other federal statute then existing provided a basis on which the Government could properly charge one so situated.[2]

Instead of addressing Alvarado's argument, Judge Hoyt based his denial of Alvarado's Motion to Dismiss on *United States v. Bleuler*, 60 F.4th 1007 (5th Cir. 2023) ("*Bleuler*"), a Fifth Circuit ruling reversing Judge Hoyt's earlier dismissal of similar charges against a differently

---

[1] Courts recognize motions for reconsideration as a "legitimate procedural device" in criminal cases. *United States v. Lewis*, 921 F.2d 563, 564 (5th Cir. 1991); *United States v. Brewer*, 60 F.3d 1142, 1143 (5th Cir. 1995) ("a motion for reconsideration ... is a judicial creation not derived from statutes or rules"). Their use in criminal proceedings has been expressly and repeatedly sanctioned. *United States v. Cook*, 670 F.2d 46, 48 (5th Cir.), *cert. denied*, 456 U.S. 982 (1982). Courts have "continuing jurisdiction over criminal cases and are free to reconsider [their] earlier decisions." *United States v. Scott*, 524 F.2d 465, 467 (5th Cir. 1975). The Fifth Circuit has made clear in the civil context that a "trial court is free to reconsider and reverse [an interlocutory order or] decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). The Fifth Circuit has noted Rule 54(b) reflects courts' inherent power to provide relief from interlocutory orders and decisions "'as justice requires.'" *Id*. at 337 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25-26 (D.C. Cir. 2015)); *Cabal v. Brennan*, 853 F.3d 763, 766 n. 3 (5th Cir. 2017).

[2] As discussed in further detail, *infra*, in December 2023 Congress recognized the existence of such gap by enacting the Foreign Extortion Prevention Act of 2023, S.2347, 118th Congress (2023-24) (to be codified by amendment to 18 U.S.C. § 201), which extends extraterritorial jurisdiction in foreign bribery cases to the "demand side," to cover foreign officials who did not set foot in the territorial U.S. during the course of the alleged scheme. Congress' addressing the very situation Alvarado was in prior to the passage of the act makes clear the existence of the gap that precludes jurisdiction over Alvarado.

situated co- defendant, Paulo Jorge Da Costa Casqueiro Murta ("Murta"). Unlike Alvarado, however, Murta (a) was not a foreign official, and (b) was indeed found to be an "agent" of a "person" within the scope of the FCPA. Neither is true of Alvarado. Accordingly, while the FCPA applies to Murta, it does not apply to Alvarado, and Judge Hoyt's application of *Bleuler* to foreclose Alvarado's argument and deny his Motion to Dismiss was in error.

In this Motion for Reconsideration (the "Motion"), Alvarado argues as follows: (1) the Government cannot evade Congress' FCPA definition of a "person," which definition, at all times relevant to the Indictment, excluded one in Alvarado's position; (2) Congress recognized this prior exclusion of "person" by subsequently enacting the Foreign Extortion Prevention Act of 2023 (the "FEPA") Pub.L. 118-31, div. E, Title LI, Section 5101, Dec. 22, 2023, 137 Sta. 931; and (3) principles of international comity require the Indictment's immediate dismissal in deference to a parallel, earlier-filed, criminal proceeding in Spain. Section I below addresses the failure of jurisdiction under the FCPA; Section II addresses international comity.

Should the Court uphold Judge Hoyt's denial of Alvarado's Motion to Dismiss, Alvarado requests certification to the Fifth Circuit of several questions related to both the jurisdictional and comity grounds of this Motion.

## ARGUMENT

## I.      THE INDICTMENT OF ALVARADO FAILS FOR LACK OF JURISDICTION.

### A.      THE FCPA DOES NOT APPLY TO ALVARADO.

#### 1.      Summary of the Argument

Alvarado was the politically appointed President of Bariven, S.A. ("Bariven"), a wholly-owned subsidiary of Petróleos de Venezuela, S.A. ("PDVSA"), the Venezuelan national oil company, and functioned as PDVSA's purchasing agent. Presently, Alvarado holds both Spanish

and Venezuelan citizenships, and at all times relevant to the Indictment, he was a Venezuelan foreign government official who never entered the U.S. during the perpetration of the alleged scheme. The Government specifies the FCPA as the sole statute supporting its Anti-Money Laundering Act ("AMLA") charges against him. But the fact remains that, at all times relevant to the Indictment, the FCPA excepted from jurisdiction foreign officials and, in particular, foreign nationals not present in the territorial U.S. at any time during the alleged scheme's perpetration. Alvarado fits within the FCPA's exception: he is not a "person" subject to FCPA jurisdiction.

Moreover, Congress's recent enactment of the FEPA, which eliminates the FCPA's exemption for foreign nationals not present in the U.S., confirms that the exemption existed during the time period relevant to Alvarado and the Indictment. Axiomatically, had the exemption not existed, Congress would not have needed to enact FEPA to eliminate it. Accordingly, the absence of the necessary and proper predicate offense compels dismissal of the charges against Alvarado.

Judge Hoyt erroneously concluded that the Fifth Circuit's decision in *Bleuler* was the law of the case and mandated denial of Alvarado's Motion to Dismiss. But if *Bleuler* were read to control as to Alvarado, then the Fifth Circuit in *Bleuler* not only reversed its well-established precedent in *U.S. v. Castle*, 925 F.2d 831, 834 (5th Cir. 1991), without acknowledging such reversal, and did so in the most unlikely manner: without mentioning *Castle*.

There is no dispute here that Alvarado is not a "person" covered by the FCPA. The FCPA limits jurisdiction to "three clear categories of persons":

(1) Issuers of securities registered pursuant to 15 U.S.C. § 78l or required to file reports under Section 78(d), or any officer, director, employee, or agent of such issuer, or any stockholder acting on behalf of the issuer, using interstate commerce in connection with the payment of bribes, 15 U.S.C. § 78dd-1;

(2) American companies and American persons using interstate commerce in connection with the payment of bribes, 15 U.S.C. § 78dd-2; and

3

      (3) foreign persons or businesses taking acts to further certain corrupt schemes, including ones causing the payment of bribes to foreign officials, while present in the United States. 15 U.S.C. § 78dd-3.

*See also United States v. Hoskins*, 902 F.3d 69 (2d Cir. 2018). The Indictment does not allege that Alvarado fits into any of these categories:

      (1)  He is not alleged to be an "issuer of securities";

      (2)  He is not alleged to be an American company or an "American person"; and

      (3)  He was not alleged to have been "present in the United States" at the time of the events alleged nor to have paid a bribe to foreign officials.

      Accordingly, the Government may not, per *RJR Nabisco, Inc. v. European Community,* 579 U.S. 325 (2016); *Gebardi v. United States,* 287 U.S. 112 (1932); *United States v. Castle,* 925 F.2d at 831; and *United States v. Hoskins*, 902 F.3d at 71, among other authorities, evade the FCPA's definition of a "person" by charging Alvarado with an AMLA conspiracy (Counts 1 and 13), or with a substantive count of aiding and abetting an AMLA violation of any sort (Counts 3, 15-17). These offenses require predicate offenses that impart jurisdiction. None applicable to Alvarado exist.

## 2.      Detailed Discussion.

      Congress restricted extraterritorial jurisdiction over public corruption prosecutions when it enacted the FCPA in 1977. At that time, Congress was aware of the earlier-enacted Sections 1956 and 1957 of Title 18. Those sections criminalized the laundering of monetary instruments representing the proceeds of specified unlawful activity or that could be used to promote the carrying on of a specified unlawful activity (the AMLA, Section 1956), as well as transactions in property derived from specified unlawful activity (Section 1957).

      Congress carefully defined what constituted a "specified unlawful activity," under Sections 1956 and 1957, both when it enacted those sections and each time it amended them in recent

decades. If the Government had sought to prosecute a person in Alvarado's position, it would have

had to do so under a statute similar to the recently-enacted FEPA. FEPA now allows jurisdiction

over one positioned as Alvarado was at the time of the alleged offenses, but FEPA did not exist

when the Government obtained the Indictment, and the law is not retroactive.

Because Alvarado was not within the territorial U.S. during the alleged scheme, he was not

a "person" within the scope of the FCPA. The Government's money laundering charges against

him therefore fail for lack of jurisdiction, mandating dismissal. As the Fifth Circuit stated in *Castle*:

> Even accepting the general idea that Congress must have some reason for exempting from
> prosecution a class of persons necessarily involved in the proscribed conduct, Congress
> was quite explicit about its reasons, but none of these reasons have anything to do with
> foreign officials. Instead, the exclusive focus was on the U.S. companies and the effects of
> their conduct within and on the United States.

925 F.2d at 834. Congress passed the FCPA to police Americans and American businesses, largely

to address the poor image that corruption casts on our citizens who do business with the rest of the

world. *Id.* The Fifth Circuit has explained as follows:

> Congress enacted the FCPA in 1977, in response to recently discovered but widespread
> bribery of foreign officials by United States business interests. Congress resolved to
> interdict such bribery, not just because it is morally and economically suspect, but also
> because it was causing foreign policy problems for the United States. In particular, these
> concerns arose from revelations that United States defense contractors and oil companies
> had made large payments to high government officials in Japan, the Netherlands, and Italy.
> Congress also discovered that more than 400 corporations had made questionable or illegal
> payments in excess of $300 million to foreign officials for a wide range of favorable actions
> on behalf of the companies.

*United States v. Kay*, 359 F.3d 738, 746 (5th Cir. 2004). The *Kay* court expanded on this

explanation, quoting from the legislative history as follows:

> The House Committee stated that such bribes were "counter to the moral expectations and
> values of the American public," "erode[d] public confidence in the integrity of the free
> market system," "embarrass[ed] friendly governments, lower[ed] the esteem for the United
> States among the citizens of foreign nations and [lent] credence to the suspicions sown by
> foreign opponents of the United States that American enterprises exert a corrupting

influence on the political process of their nations." H.R. Rep. No. 95-114 at 3-4 (1977), *reprinted in* 1977 U.S.C.C.A.N. 4098, 4100-01.

*Kay*, 359 F.3d at 746 n.22.

Judge Hoyt denied Alvarado's Motion to Dismiss because he surmised that the Fifth Circuit's opinion in *Bleuler* concerning co-defendant Murta had foreclosed Alvarado's arguments. He did so without addressing Alvarado's legal arguments in his Motion to Dismiss and in his Reply. Subsequent to Judge Hoyt's ruling, Congress validated Alvarado's arguments by enacting FEPA. This validation, and the differences between Alvarado's and Murta's respective positions, proves Judge Hoyt's reasoning in denying Alvarado's Motion to Dismiss is fatally flawed. In *Bleuler*, the Government (1) charged Murta as a private citizen, not as a foreign official, and (2) alleged that Murta was an "agent" under the FCPA. Because Alvarado was neither a private citizen nor an agent, Judge Hoyt's conclusion that *Bleuler* was "the law of the case" as to Alvarado was unfounded. *See* Order at 5.

The Indictment begins in Paragraph 1 by invoking the FCPA and its jurisdiction over "foreign officials." The Indictment then concedes, in Paragraph 2, that the foreign officials whose bribery is prohibited under the FCPA were officials of PDVSA, Venezuela's "state-owned and state-controlled oil company."[3] Recognizing that Congress retained the jurisdictional exception

---

[3] In its Response to Alvarado's Motion to Dismiss (the "Response"), the Government tried to disown the FCPA foundation on which it relies in the Indictment. The Response argued that Alvarado "was not charged with violating the FCPA. He was only charged with violating the money laundering statute." *Compare* Govt. Resp. at 11 n.6 (arguing that Alvarado "was charged only with violating the money laundering statute") with Counts 1, 3, 13, 15-17 (making clear bribery of foreign officials under the FCPA is the predicate act for each charge). But extraterritorial jurisdiction does not exist independently under the money laundering statute. It only exists if there is a viable specified unlawful activity to support the money laundering counts. The Government admits in its Response that no such predicate exists here. Without a viable predicate offense, this Court must dismiss the Indictment.

for foreign officials not present in the U.S. during the course of the alleged offense,[4] the Fifth

Circuit stated as follows:

> The [survival of the] exclusions reinforce[s] the proposition that Congress had absolutely
> no intention of prosecuting the foreign officials involved but was concerned solely with
> regulating the conduct of U.S. entities and citizens.

*U.S. v. Castle*, 925 F.2d at 834.

Commenting further on this exception and any attempt to use the general conspiracy

statute, 18 U.S.C. § 371, to avoid the exception, the Fifth Circuit stated as follows:

> Given that Congress included virtually every possible person connected to the payments
> except foreign officials, it is only logical to conclude that Congress affirmatively chose to
> exempt this small class of persons from prosecution.

*Castle*, 925 F.2d at 836. The Fifth Circuit observed that any construction of AMLA gutting this

exception would flout Congress's intent, in the FCPA, "to leave unpunished a well-defined group

of persons who were necessary parties to the acts constituting a violation of the substantive law."

*Id*. at 836. The Fifth Circuit emphasized that "it would be absurd to take away with the earlier and

more general conspiracy statute the exemption from prosecution granted to foreign officials by the

later and more specific, FCPA." *Id*.[5]

**Counts 1 and 13** against Alvarado allege conspiracy to commit money laundering under

the AMLA's conspiracy subsection, 18 U.S.C. § 1956(h). Count 1 alleges Alvarado sought to

---

[4] Just as Congress refused in 1977 to extend FCPA jurisdiction over foreign nationals absent exceptional circumstances, Congress chose not to circumscribe gratuitous payments by Americans abroad to foreign officials to "grease" the wheels of commerce, referred to in the case law and literature as "grease payments." The "grease payments" exception survived multiple amendment rounds, justifying such a practice where it "was legal in the country in which it was made." *See* 15 U.S.C. § 78dd-2(b).

[5] "All laws are to be given a sensible construction; and a literal application of a statute, which would lead to absurd consequences, should be avoided whenever a reasonable application can be given to it, consistent with legislative purpose." *Castle*, 925 F.2d at 836; *cf*. *United States v. Lazarenko*, (Case. No. 105921) N.D.C.A. Apr. 10, 2009, 2001 WL 37131525, at *3 (distinguishing *Castle* in a case where the Government sought to prosecute defendant for crimes predicated on extortion and fraud as well as money laundering) (quoting *United States v. Katz*, 271 U.S. 354, 357 (1926)).

receive bribes. *See, e.g.*, Super. Indict., ¶¶ 51-53, 55, 60-62. Count 13 alleges the same. *See, e.g.*, *id.*, ¶¶ 188, 192, 212, 224, 228. Section 1956(h) states: "Any person who conspires to commit any offense defined in this section … shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy."

In other words, to state a Section 1956 case an indictment must identify an offense from among the "offense[s] defined in this section." Conspirators must be conspiring to do something, and that something must be one of the "offense[s] defined in this section." Count 1 reads that the "offense defined in this section" is the FCPA. That is, in Paragraph 49(a-b) of the Indictment, which is the active charging instrument here, the Government identifies the predicate specified unlawful activity as "namely . . . bribery of a foreign official, a felony violation of the FCPA." Count 13 repeats the same. Super. Indict., ¶186(a-b). That the FCPA is the Government's only possible foundation for Counts 1 and 13 is not in question, but the foreign official exception to the FCPA renders this foundation, and the charges filed thereunder, untenable.

 The Government brought **Count 3** under Section 1956(a)(1)(B)(i) and 18 U.S.C. § 2, alleging Alvarado conducted or aided and abetted in the act of money laundering "(B) knowing that the transaction is designed in whole or in part—

> (i)     to conceal or disguise the nature, the location, the source, the ownership, or the
>         control of the proceeds of specified unlawful activity."

The "specified unlawful activity" in Count 3 of the Indictment (Paragraph 180) is an FCPA violation. Alvarado, a foreign official not present in the U.S. during the course of the scheme, is exempt from the FCPA.

The Government brought **Counts 15-17** under Section 1956(a)(2)(A) and the aiding and abetting statute, 18 U.S.C. § 2. Section 1956(a)(2)(A) requires the Government to identify the "specified unlawful activity" upon which it relies. What might qualify as a "specified unlawful

activity" is set forth in Section 1956(c)(7)(D) and includes, among other things, "any felony violation of the Foreign Corrupt Practices Act." Counts 15 –17 of the Indictment make clear the "specified unlawful activity" consists of, "namely, bribery of a foreign official," under the FCPA. (*See* Superseding Indictment Para. 259.)

To summarize, all five Counts against Alvarado allege he is criminally liable under the AMLA by and through the FCPA's foreign-official bribery predicate, as the Government's one and only chosen specified unlawful activity. But the FCPA's "foreign official" exception renders these allegations groundless as to Alvarado. The Government tries to evade this problem by alleging conspiracy and aiding and abetting under the AMLA, but by accepting the Government's use of AMLA, this Court would negate the FCPA's well-established exception for foreign officials in Alvarado's situation.

Should this Court agree with Alvarado that *Bleuler* is not the law of the case, Alvarado asks this Court to reconsider Judge Hoyt's Order denying Alvarado's Motion to Dismiss and to dismiss all charges against him. Alternatively, should this Court conclude Judge Hoyt was correct, and that the Fifth Circuit's *Bleuler* opinion requires this Court to deny Alvarado's Motion to Dismiss, Alvarado asks the Court to certify this question to the Fifth Circuit, because such a conclusion would interpret *Bleuler* as having overruled the Fifth Circuit's settled precedent in *Castle,* 925 F.2d 831--without even mentioning the case.

## B.   CONGRESS' SUBSEQUENT FEPA ENACTMENT CONFIRMS ALVARADO'S FCPA EXCEPTION ARGUMENT.

Section I above identifies Congress' foreign-official exception to FCPA jurisdiction and explains why the Government cannot circumvent the FCPA's limited "person" definition by charging a foreign official with money laundering. Had the Government been able to prosecute foreign officials in Alvarado's position by alleging money laundering, conspiracy, or aiding and

9

abetting, a subsequently enacted U.S. law criminalizing a foreign official's solicitation or receipt of a bribe would have been unnecessary. Yet, in December 2023, as part of the National Defense Authorization Act for Fiscal Year 2024 ("NDAA"), Congress did just that. Several days later, on December 22, 2023, the President signed it into law. Congress codified FEPA as an amendment to 18 U.S.C. § 201. According to the legislative history, the FEPA drafters were "tired" of officials in such nation-states as China and Russia making corruption a matter of state policy, notably in their activities in Latin America. *See* Hearing on Countering Threats Posed by Nation-State Actors in Latin America to U.S. Homeland Security Before the Subcomm. on Counterterrorism, Law Enforcement, and Intelligence of the H. Comm. on Homeland Security, 118th Cong. 1st Sess. (2023) (Serial No. 118–18) at 1 (Chairman Pfluger stating the purpose of the hearing is to "examine the threats posed by nation-state actors in Latin America, like China and Russia[,] to the United States['] homeland security").[6]

---

[6] One of the witnesses at the hearing, Ms. Elaine K. Dezenski, former Assistant Secretary for Policy Development at the Department of Homeland Security, testified as follows:

> Supporting legislation to counter kleptocracy and State-sponsored corruption is also critical. Legislation such as the Foreign Extortion Prevention Act, which was introduced in the last Congress, could help with expanding anticorruption enforcement tools and building on the Foreign Corrupt Practices Act.

Were Alvarado's case and similar cases brought within the ambit of the FCPA by using the AMLA conspiracy provisions, there would be no need to do any "building on the Foreign Corrupt Practices Act." Read any other way, several rounds of drafting in both houses, hearings, reports, and consideration and passage of the FEPA would have been unnecessary.

In her prepared statement, Ms. Dezenski listed several specific actions Congress should take, including the following numbered item:

> (6) Support legislation to counter kleptocracy and state-sponsored corruption, such as the Foreign Extortion Prevention Act (FEPA).

> Corruption preys on weak regimes throughout Latin America, boosting authoritarianism, destroying lives and livelihoods, undermining U.S. interests, pushing out law-abiding U.S. companies, and facilitating China's bribe-fueled incursions throughout the hemisphere. U.S.-based and U.S.-listed companies face major consequences for bribing foreign officials under the Foreign

FEPA makes it a crime for foreign officials to demand or accept anything of value, personally, or for another person or non-governmental entity, in order to influence the performance of an official act or otherwise confer an improper advantage. To effect this change, Congress amended Section 201 of Title 18, United States Code, by defining the term "foreign official":

> (4) the term 'foreign official' means –
>
> > (A)(i) any official or employee of a foreign government or any department or, agency, or instrumentality thereof; or
> >
> > (ii) any senior foreign political figure …
> >
> > (B) any official or employee of a public organization;

Codified, as amended, at 18 U.S.C. § 201. Accordingly, FEPA imparted extraterritorial jurisdiction over foreign officials by abolishing the FCPA exemption that applies to Alvarado.

What need was there for this new legislation to encompass foreign officials if the AMLA already accomplished the same purpose? The need was to address the "demand side" of bribery, just as the FCPA had addressed the "supply side."

In the FCPA as drafted in 1977, and as amended since then, Congress decided that, in limited circumstances, a foreign official could be cast as an agent of, or conspirator with, the American company or individual soliciting the bribe, but only if the official or officials were

---

Corrupt Practices Act. Corrupt officials, however, get off scot-free, as do the Chinese companies and officials bringing gift boxes filled with cash.

China is sidelining American companies in the race for critical resources, partnerships, and contracts largely because corruption and opacity are central features of Chinese engagement. In order to raise the stakes for crooked foreign officials and narrow the window for Chinese interference, Congress should consider expanding anti-corruption law enforcement tools such as those found in the Foreign Extortion Prevention Act (FEPA)—which would parallel the FCPA by criminalizing bribe demands made of U.S. and U.S.-listed companies.

FEPA had strong bipartisan support in the last Congress, is supported by the U.S. Chamber of Commerce and a broad coalition of civil society and reflects a commitment included in the National Security Council's Strategy on Countering Corruption.

11

present in the U.S. during the scheme's perpetration. Note that 15 U.S.C. § 78dd-3(a)(1) of the FCPA prohibited "any person" from bribing "any foreign official" for various enumerated purposes, but it did not prohibit "foreign officials" from receiving bribes. Thus, for better or for worse, the FCPA left the "demand" side (foreign officials demanding bribes) unchecked. The Congress that enacted the FCPA in 1977 refrained from extending extraterritorial jurisdiction over foreign nationals who were not agents of, or co-conspirators with, American persons or entities. And, as discussed below, such restraint was consistent with the American government's historical deference to traditional principles of international comity.

In enacting FEPA, and long after the allegations set out in the Indictment, the current 118th Congress changed course. It made a conscious decision to fill the gap by targeting the very foreign officials prior Congresses had left outside the Government's prosecutorial reach. The newly-crafted FEPA now prohibits foreign officials from receiving bribes from any FCPA "person," "issuer," or "domestic concern":

> "(f) PROHIBITION OF DEMAND FOR A BRIBE.—
>
> (1) OFFENSE.—It shall be unlawful for any *foreign official* or person selected to be a foreign official to corruptly demand, seek, receive, accept, or agree to receive or accept, directly or indirectly, anything of value personally or for any other person or nongovernmental entity, by making use of the mails or any means or instrumentality of interstate commerce, from any person (as defined in section 104A of the Foreign Corrupt Practices Act of 1977 (15 U.S.C. § 78dd-3), except that that definition shall be applied ***without regard to whether the person is an offender while in the territory of the United States***[7], from an issuer (as defined in section 3(a) of the Securities Exchange Act of 1934 (15 U.S.C. § 78c(a))), or from a domestic concern (as defined in section 104 of the Foreign Corrupt Practices Act of 1977 (15 U.S.C. § 78dd-2), in return for—
>
> (A) being influenced in the performance of any official act;

---

[7] The emphasized language confirms that Congress recognized and eliminated the FCPA foreign official coverage exception.

(B) being induced to do or omit to do any act in violation of the official duty of such foreign official or person; or

(C) conferring any improper advantage, in connection with obtaining or retaining business for or with, or directing business to, any person.

Pub. L. No. 118-31, div. E, title LI, Section 5101, Dec. 22, 2023, 137 Stat. 931 (emphases added).

The Rule Against Surplusage is a statutory construction principle requiring that every statutory provision be given effect, with none needlessly duplicating other provisions or having no consequence. *See Nielsen v. Preap*, 139 S. Ct. 954, 969 (2019) (discussing "the interpretive canon against surplusage"—the idea that "every word and every provision is to be given effect [and that n]one should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence"). Had the FCPA prior to FEPA unconditionally permitted prosecution of foreign officials for receiving bribes, Congress would have had no need to enact FEPA, rendering it mere surplusage. Consequently, under the referenced Rule, this Court must presume Congress did not intend such a result.

FEPA is not retroactive. Consequently, the statute of limitations bars Alvarado's prosecution pursuant to FEPA under any superseding indictment.

Under standard statutory construction rules, Courts presume Congress knows the state of the law at the time it passes legislation. *See, e.g., United States v. González*, 547 F.Supp. 3d 1083, 1116, n.13 (D. New Mexico 2021) (Congress is presumed to know the state of the law that existed at the time it passed the First Step Act) (citing *Dewsnup v. Timm*, 502 U.S. 410, 419 (1992) ("When Congress amends the bankruptcy laws, it does not 'write on a clean slate.'") (quoting *Emil v. Hanley*, 318 U.S. 515, 521 (1943)); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 696-97 (1979) ("It is always presumed that our elected officials, like other citizens, know the law.") *Lindsey v. Lessee of Miller*, 31 U.S. Pet. 666, 669, 8 L. Ed. 538 (1832) ("When in 1807 Congress passed the law,

13

they must be presumed to have legislated on the then existing state of things."). And Congress is "at its most authoritative [when] adding complex and sophisticated amendments to an already complex and sophisticated act." *Kay*, 359 F.2d at 752 (quoting *Mount Sinai Hosp. v. Weinberger*, 517 F.2d 329, 343 (5th Cir. 1975).

Therefore, if the Government's argument were correct that AMLA could serve as the sole basis for jurisdiction over foreign officials — without requiring a viable specified underlying activity — FEPA would be meaningless. If AMLA served the same purpose, there would have been no need for FEPA to eliminate the FCPA exemption. In subsection (8), "Construction," Congress made this clear: "This subsection shall not be construed as encompassing conduct that would violate section 104 or 104A of the Foreign Corrupt Practices Act of 1977 (15 U.S.C. § 78dd–2; 15 U.S.C. § 78dd–3) whether pursuant to a theory of direct liability, conspiracy, complicity, or otherwise." The FCPA encompassed conduct on the "supply side," including conduct of a foreign national inside the territorial U.S. at some point during the alleged scheme.[8] What the FCPA did not encompass was conduct relating to a foreign official *not* present in the U.S. at any time during the alleged scheme. FEPA now fills that gap. Summarizing, Congress enacted FEPA to fill the jurisdictional gap Alvarado identified in his Motion to Dismiss--a jurisdictional gap that necessitates dismissal of the charges against him.

## C.    THIS COURT MAY ADDRESS THE QUESTIONS *BLEULER* LEFT OPEN AND JUDGE HOYT FAILED TO ADDRESS.

### 1.    Grounds of Judge Hoyt's Order.

The foregoing Sections A and B warrant the Indictment's immediate dismissal without further consideration. But if, before ruling, the Court prefers to consider and address the questions

---

[8] This inclusion in the FCPA for foreign nationals present in the U.S. at some point during the alleged scheme might be consonant with the *Castle* analysis, by recognizing that foreign officials lose that differential treatment when they enter the United States and subject themselves to U.S. jurisdiction.

the Fifth Circuit and Judge Hoyt did not consider, the following argument enables further analysis by elucidating Judge Hoyt's Order and the authorities he relied on.

Judge Hoyt's written analysis did not address three of Alvarado's four grounds at all and incorrectly suggested the Fifth Circuit had foreclosed the fourth. His analysis is as follows:

> The Fifth Circuit Court of Appeals addressed the scope of Title 18 U.S.C. § 1956 [the AMLA], in *United States v. Rafoi*, Cause Nos. 21-20658 and 22-20377, consolidated (February 28, 2023) [cited herein as *Bleuler*]. There, it cited to *United States v. Ojedokun*, 16 F.4th 1091, 1106 (4th Cir. 2021, *cert. denied*, 142 S.Ct. 2780 (2022)), for the proposition that a non-U.S. Citizen may be subject to prosecution under § 1956(f), even when he is not a U.S. Citizen, where his conduct occurred entirely overseas and who has not entered the United States during the conspiracy. The Fifth Circuit also pointed to *United States v. Iossifov*, 45 F.4th 899, 912-14 (6th Cir. 2022) as authority.

Order at 5-6. Yet the Sixth Circuit in *Iossifov* based jurisdiction on the finding that some of the conduct *did* occur in the United States. *Iossifov*, 45 F.4th at 913.[9]

The gravamen of Judge Hoyt's Order is his interpretation of the Fifth Circuit's holding in *Bleuler* that "a non-U.S. Citizen may be subject to prosecution under § 1956(f) … even when he is not a U.S. Citizen, where his conduct occurred entirely overseas, and [he] has not entered the United States during the conspiracy." Order at 5.

---

[9] The Sixth Circuit's conclusion in *Iossifov* supporting jurisdiction was based on that defendant's considerably greater activity within U.S. territory than is alleged here. The Sixth Circuit explained, "The record contains a long list of such conduct." 45 F. 4th at 913. The Sixth Circuit summarized that activity as follows:

> The parties agree that the network used fraudulent online advertisements on websites like eBay, Craigslist, and Amazon to convince unknowing purchasers in the United States to send payment for high-value items that did not actually exist. After receiving the payments through vehicles like gift cards and prepaid debit cards, AOAF Network money launderers in the United States, including Brown, converted the payments into Bitcoin currency, which was then transferred back to Romania. Foreign Bitcoin exchange business including RG Coins, Iossifov's business based in Bulgaria, then transferred the Bitcoin balances to cash on behalf of the AOAF Network fraudsters. Victim purchasers never received the items for which they paid.

*Iossifov*, 45 F.4th at 899.

The problem is that in *Bleuler* the Fifth Circuit recognized that Judge Hoyt had not, in fact, considered "claims concerning the conspiracy and money laundering statutes," which the Fifth Circuit referred to as "conspiracy-related issues … including the application of the limited exception created by *Gebardi,* 287 U.S. at 112, the implication of the FCPA's text, history, purpose, and the presumption of extraterritoriality." *United States v. Rafoi*, 60 F.4th 982, 995 (5th Cir. 2023) (citations omitted).

Because Judge Hoyt had not considered claims concerning conspiracy and money laundering, then, in issuing *Bleuler*, the Fifth Circuit did not consider them either. And it is those very claims on which the Government bases its Indictment. Accordingly, *Bleuler* cannot control or, in turn, require the Court's denial of Alvarado's Motion to Dismiss.

Moreover, because Judge Hoyt and, in turn, the Fifth Circuit, did not address the conspiracy and money laundering claims, the Fifth Circuit did not address the predicate FCPA conspiracy and extraterritoriality issues either. For that reason alone, *Bleuler* is not, and cannot be, the law of the case. *Bleuler* cannot foreclose Alvarado's FCPA-related arguments that he falls within the deliberate exception Congress created. Consequently, *Bleuler* does not apply to Alvarado and is not dispositive of his Motion to Dismiss.

### 2.    Alvarado is Not Murta.

There is another equally compelling reason *Bleuler* cannot control Alvarado's Motion to Dismiss: the *Bleuler* defendant was positioned differently from Alvarado and did not fall within the FCPA foreign official exception.

### a.    Alvarado is Situated Differently from Murta.

In *Bleuler*, the Fifth Circuit upheld the two FCPA-related charges against Murta for two reasons, neither of which applies to Alvarado. First, Murta was not a foreign official, and second, *Bleuler* found that Murta was a "person" covered by the FCPA because he fit the definition of an

"agent" of a "domestic concern." *Bleuler*, 60 F.4th at 994. And *Bleuler* did not address whether Murta conspired with parties subject to the FCPA. *Id*. Alvarado was neither an agent nor a co-conspirator, and he was not situated in any place or position where he could have been. Rafoi worked for a Swiss financial institution that was processing money on behalf of, or for the benefit of, briber "suppliers." Murta worked for a Portuguese financial institution that was processing money on behalf of, or for the benefit of, briber "suppliers" in the U.S. By contrast, Alvarado was a foreign official and an alleged bribe recipient on the demand side, and thus specifically excluded by Congress from liability under the FCPA.

**b.** **Unlike Alvarado, Murta Was Alleged to be an "Agent" Under the FCPA (Relevant to Counts 1, 3, 13, and 15-17).**

In *Bleuler*, when the Fifth Circuit addressed the Indictment's allegation that Murta was an "agent" under the FCPA, it recognized that the Indictment "specifically alleges" that Murta acted as a "person" under the FCPA. *Bleuler*, 60 F.4th at 994. In *Bleuler* the Fifth Circuit also observed that the Indictment had repeatedly alleged that Rafoi and Murta had acted as "agent[s] of a 'domestic concern' as the FCPA uses those terms, Title 15, United States Code, Section 78dd-2(h)(1)." *Id*. The Fifth Circuit stated, "This paragraph is incorporated into every count with which Defendants [Rafoi and Murta] are charged." *Id*. But being an agent of a domestic concern is precisely what the Indictment did not allege as to Alvarado. Nowhere does the Indictment allege Alvarado was an "agent" or any other kind of "person" subject to the FCPA. Absent indictment as an "agent" or a "person" under the FCPA, the Government has no specific underlying offense to support its charges against Alvarado. Absent a viable specified underlying offense, the money laundering case against him cannot proceed.

3.      **The Fifth Circuit's Reservation of the Analysis of the AMLA's Conspiracy Section (Relevant to Counts 1 and 3).**

The Government also charged Murta with a criminal conspiracy with "actors subject to principal liability under the FCPA," *Bleuler*, 60 F.4th at 995. The Fifth Circuit did not address this charge because it could make its decision to overturn based on its "agency" analysis alone. The Fifth Circuit explained that "the parties" in *Bleuler* had requested it as follows:

> to rule on conspiracy-related issues that the district court did not consider, including the application of the limited exception created by *Gebardi*, 287 U.S. at 112, the implication of the FCPA's text, history, purpose, and the presumption of extraterritoriality.

*Id*. But the Fifth Circuit did not rule on these issues.

The Fifth Circuit did not consider *Gebardi*, the foundation of the Circuit's decision in *Castle* (*see* 925 F.2d at 833). This means that *Castle* upholds the FCPA foreign official exemption that precludes jurisdiction over Alvarado. Consequently, because the Fifth Circuit in *Bleuler* did not consider this FCPA foreign official exemption issue, *Bleuler* cannot serve as the law of the case as to Alvarado with respect to either agency or conspiracy.

Elucidation of *Gebardi* is instructive. *Gebardi* held that the Government may not use conspiracy and aiding and abetting statutes to circumvent Congress' intent to exclude a class of individuals from criminal liability for substantive offenses. *See* Dkt. 363 at 40; Dkt. 425 at 6. The Fifth Circuit's decision in *Castle* tracked *Gebardi*. *Castle* held that the Government may not prosecute a foreign official alleged to be a bribe recipient because such an official is not a covered "person" under the FCPA. *Castle*, 925 F.2d at 832. The Fifth Circuit added that the FCPA "does not criminalize the receipt of a bribe by a foreign official." *Id.* Nor does the FCPA criminalize such an official's alleged conspiracy to violate the FCPA. *Id*. at 835-36. *See* Dkt. 363 at 38-20; Dkt. 425 at 3, 6-8.

In *Bleuler*, the Fifth Circuit made clear that the applicability of the FCPA foreign official exception was "not ruled upon by the district court." The Fifth Circuit did not address the issue because it, like Judge Hoyt, did not reach it. But Alvarado was then a foreign official protected by the exception, so, in considering Alvarado's Motion, this Court must reach the issue of whether as a principal, an aider and abettor or conspirator, a defendant's AMLA violation provides a basis for the Government to circumvent the FCPA's foreign official exemption. The FCPA and the case law preclude the Government's answering this question affirmatively. Indeed, five years after the landmark case of *United States v. Hoskins*, 902 F.3d at 97, the Government still has not, as the Second Circuit recognized in that case, cited any "case in which a statute drew specific lines as to its extraterritorial application, and [that any court exceeded] those lines . . . using the conspiracy or complicity theories." *Id.*

### 4.    *Bleuler* **Does Not Apply to One Situated as Alvarado (Relevant to All Counts).**

The Fifth Circuit's *Bleuler* discussion of the money laundering charges against Murta and Rafoi – both private citizens accused of facilitating bribes – did not address someone in Alvarado's position, i.e., one charged with receiving bribes as a foreign official. Moreover, the Fifth Circuit premised its analysis of the money laundering charges against Rafoi and Murta on each being a "foreign citizen," distinct from a "foreign official," as was the case with Alvarado. *Bleuler* noted as follows:

> ….the text of 18 U.S.C. § 1956 demonstrates Congress's clear and specific intent for the statute to apply extraterritorially in a case like this, where a foreign citizen engages in money-laundering activity in part in the United States.[10]

_____

[10] While the starting or ending points of wire transactions may be relevant to an AMLA claim, it does not matter to the FCPA-dependent claims against a former foreign official that some part of the wire transactions took place in the United States. The FCPA "does not impose liability on a foreign national who is not an agent, employee, officer, director, or shareholder of an American issuer or domestic concern— unless that person commits a crime [while located] within the territory of the United States." *Hoskins I*, 902 F.3d at 96 (citing 15 U.S.C. § 78dd-3(a) (limiting liability to actions taken "while in the territory of the

*Bleuler*, 60 F.4th at 998.

The Government alleged that both Rafoi and Murta were "agents" of an FCPA-covered person or entity. The Government has never alleged Alvarado was an "agent" of a covered person or entity. And Rafoi and Murta were not foreign government officials, as was Alvarado. In the portion of *Bleuler* on which Judge Hoyt based his Order, the Fifth Circuit cited several cases, all of which dealt with private foreign citizens, not foreign government officials who were not present in the U.S. at any moment during the alleged scheme. The Fifth Circuit cited *United States v. Ojedokun*, 16 F.4th 1091, 1106 (4th Cir. 2021), *cert. denied*, 142 S. Ct. 2780 (2022), *United States v. Stein*, Crim. A. No. 93-375, 1994 WL 285020, at *4 (E.D. La. June 23, 1994), and *United States v. Iossifov,* 45 F.4th at 912-14, all of which were strictly limited to the question, irrelevant here, of whether the AMLA required that a defendant who *did* qualify as a "person" under the FCPA must be physically present in the U.S. at any time during an alleged offense. Moreover, none of those cases dealt with a foreign official accused of receiving bribes, the crucial distinction here: Rafoi is a private citizen of Switzerland. Super. Indict. ¶11; Murta is a private citizen of Switzerland and Portugal. *Id.*, ¶11. Although the Government now tries to evade the significance of this crucial distinction, it once made clear its recognition, in Paragraph 10 of the Indictment, that "Alvarado was a 'foreign official.'" And it made clear it used that term "as the term is used in the FCPA." Super. Indict. ¶10.

---

United States")). Reading the AMLA any other way would, for all practical means, eliminate the clear exception Congress carved out in the FCPA for those foreign officials.

5.     *Bleuler* **and the Cases Cited by The Fifth Circuit and Judge Hoyt are Inapposite.**

The Indictment drew a bright line between private citizens Rafoi and Murta, on the one hand, and the state-affiliated "PDVSA Defendants," on the other hand. *Compare* Super. Indict. ¶4 (defining "the PDVSA Defendants") with ¶5 (identifying Defendants who were not public officials: Murta and Rafoi). The Government identified Alvarado as one of "the PDVSA Defendants," who were officials of a state entity. Thus, the Government distinguished him from the two defendants who were not public officials and were the sole subject of *Bleuler*.

To summarize, *Bleuler* cited three cases, two of which Judge Hoyt cited in his Order, and one, *Ojedokun*, from which he paraphrased "the proposition" he considered settled. But none of those cited cases relates to Alvarado's unique situation and the issue he raises here: whether the Government may prosecute an accused under the AMLA for the alleged bribery of a foreign official and rely on the FCPA as the necessary predicate offense where the accused is a foreign official and not a "person" as defined in the FCPA. None of the cases Judge Hoyt cited presented any risk, as Alvarado's case does, of violating precedent by contravening the FCPA's exclusion from extraterritorial jurisdiction of foreign officials not present in the U.S. at any point during the alleged scheme.

6.     **The Fifth Circuit in** *Bleuler* **Invited Judge Hoyt to Decide "In the First Instance."**

In *two* successive opinions, first with Rafoi and Murta, combined, and then with Alvarado, Judge Hoyt did not rule on whether Alvarado, or anyone else in his position, is a "person" under the FCPA (affecting Counts 3, 15-17). Nor did either Judge Hoyt or the Fifth Circuit rule on the issues raised by *Gebardi, Castle,* and *Hoskins*: the hazard of applying conspiracy and aiding and

abetting theories (Counts 1 and 13) against individuals the FCPA does not include within its limited definition of a "person."

### 7.    *Bleuler* is not the Law of the Case as to Alvarado.

The law-of-the-case doctrine does not govern here. The law-of-the-case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages in the same case." *United States v. Castillo*, 179 F.3d 321, 326 (5th Cir. 1999) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). Therefore, "an issue of . . . law decided on appeal may not be reexamined by the district court on remand or by the appellate court on a subsequent appeal." *United States v. Lee*, 358 F.3d 315, 320 (5th Cir. 2004) (citation and internal quotation marks omitted). But *Bleuler* did not decide whether alleged FCPA violations may serve as predicates under AMLA if the FCPA does not apply to the defendant in the first place, as a principal, through agency or conspiracy, or otherwise.

"[A]n issue that is not expressly or implicitly decided on appeal does not become part of the law of the case." *Medical Center Pharmacy v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011) (citing *Alpha/Omega Ins. Servs., Inc. v. Prudential Ins. Co. of Am.*, 272 F.3d 276, 279 (5th Cir. 2001).

In *Alpha/Omega,* the court noted that, "unlike res judicata, the law of the case doctrine applies only to issues that were actually decided, rather than all questions in the case that might have been decided but were not." *Id*. In *Bleuler* the Fifth Circuit neither addressed nor decided whether the Government could prosecute Murta or Rafoi as foreign officials under the AMLA for FCPA conspiracy predicates that did not apply to them. Instead, the Fifth Circuit concluded FCPA predicates such as "agency" did apply to them. Its analysis ended there. For this reason, Alvarado moves that the Court reconsider Judge Hoyt's ruling on his Motion to Dismiss, and dismiss the FCPA-dependent charges against him, meaning all charges against him.

### D.     CERTIFICATION REQUEST AS TO JURISDICTIONAL ISSUES.

#### 1.     Proposed Certification Questions.

In the event this Court decides *Bleuler* binds the Court and, therefore, Alvarado, he requests certification to the Fifth Circuit of Questions 1 and 2, as follows:

1. May the Government prosecute a foreign official under the AMLA, whether (a) as a principal, (b) based upon a theory of aiding and abetting, or (c) as a co-conspirator, when that official is not a "person" as was defined by the FCPA prior to passage of the FEPA?

2. May the Government prosecute a foreign official under the AMLA whether (a) as a principal, (b) as and aider and abettor, or (c) as a co-conspirator, without, in each instance, identifying a viable specified unlawful activity in the AMLA upon which it is relying to bring the money laundering charges?

#### 2.     Standards Governing Certification.

Title 28 U.S.C. § 1292(b) prescribes a three-factor analysis to determine whether a district court judge might certify an interlocutory appeal of the court's order. The court may do so if the judge is of the opinion that the order:

> "[1] involves a controlling question of law
>
> [2] as to which there is substantial ground for difference of opinion and
>
> [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation."

28 U.S.C. § 1292(b); *see also Rico v. Flores*, 481 F.3d 234, 238 (5th Cir. 2007) (summarizing factors).

Section 1292(b) does not limit how many questions a district court may certify for interlocutory appeal in any given case. *See, e.g., Escobedo v. ACE Gathering, Inc*., Civil Action No. H-22-538, 2023 WL 5511199 at *1 (S.D. Tex. Aug. 25, 2023) ("The court certifies three

23

controlling questions of law for interlocutory appeal"). Further, it is proper for a district court to find a party's argument "unconvincing" and "unpersuasive" so as to deny a motion for reconsideration, yet still make the 1292(b) findings and agree to certify the argument for interlocutory appeal. *See Easom v. US Well Servs.*, 527 F. Supp. 3d 898, 917 (S.D. Tex. 2021), *rev'd and remanded*, 37 F.4th 238 (5th Cir. 2022). This holding confirms the maxim that "reasonable minds may differ."

In certifying interlocutory appeal orders, the Fifth Circuit advises district judges to state "more than … a bare finding that the statutory requirements of section 1292(b) have been met." *Releford v. City of Houston*, Civil Action No. 4:14-CV-02810, 2016 WL 7051662, at *2 (S.D. Tex. Dec. 5, 2016) (citing *Linton v. Shell Oil Co.*, 563 F.3d 556, 558 (5th Cir. 2009)). But that guidance does not prescribe what the Fifth Circuit may do once it entertains the certified question. "Although the district court should identify a question, the Court of Appeals in its review may address all issues material to the order; it is not limited to the question certified by the district court." *Releford* at *2 (citing *Ducre v. Exec. Officers of Halter Marine, Inc.*, 752 F.2d 976, 984 (5th Cir. 1985)).

### 3. Both Questions Meet the Certification Standards.

This Court may rightfully conclude that: (1) both FCPA-related proposed questions above involve controlling questions of law; (2) there are substantial grounds for differences of opinion on each, as the Government's prosecution of Alvarado continues to this day; and (3) an immediate appeal will materially advance the ultimate termination of this litigation because each of the proposed questions, if answered in Alvarado's favor, would dispose of all charges against him.

#### a. Both Questions are Controlling Questions of Law

Whether an issue of law is controlling hinges upon its potential to meaningfully impact the litigation's course. *See Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 722-23 (N.D. Tex. 2006).

"In sum, a controlling question of law—although not consistently defined—at the very least means a question of law the resolution of which could materially advance the ultimate termination of the litigation—thereby saving time and expense for the court and the litigants." *Id*. (citing 16 Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure, § 3930 at 426 & n.25 (2d ed. 1996 & Supp. 2005) (hereafter "Wright, Miller") (citing *S.E.C. v. Credit Bancorp, Ltd*., 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000)); *Id.*, § 3930 at 423-34. A question is "controlling" if its disposition would require a final judgment's reversal, either for further proceedings or for dismissal that might have been ordered without the ensuing district court proceedings. *Id.* at 723 (citing cases).

Conversely, "an issue is not seen as controlling if its resolution on appeal 'would have little or no effect on subsequent proceedings.'" *Id*. (quoting John C. Nagel, Note*, Replacing the Crazy Quilt of Interlocutory Appeals Jurisprudence with Discretionary Review*, 44 Duke L.J. 200, 212 (1994) and 16 Wright, Miller, § 3930 at 432). *See also Rodríguez v. City of Corpus Christi*, No. 2:21-CV-00297, 2023 WL 6371029, at *2 (S.D. Tex. June 10, 2023) (holding question is controlling because it determines viability of the underlying claim itself).

"[Section] 1292(b) refers to a 'pure question of law rather than merely to an issue that might be free from a factual contest. The idea was that if a case turned on a pure question of law, something the court of appeals could decide quickly and cleanly without having to study the record, the court should be enabled to do so without having to wait till the end of the case.'" *McCollum v. Livingston*, No. 4:14-CV-3253, 2017 WL 2215627, at *3 (S.D. Tex. May 19, 2017) (citing *Ahrenholz v. Bd. of Trustees of Univ. of Illinois*, 219 F.3d 674, 676–77 (7th Cir. 2000)).

In Section I of this Motion, Alvarado requests certification of two questions of law. Answers to these questions could require dismissal of all five charges against him or subject him

to further prosecution from a U.S. Government that he regularly took the initiative to contact and inform about the very conduct outlined in the Indictment. Both questions have a "major impact on the course of the litigation" and clearly "advance [its] ultimate termination." *Flowserve,* 444 F.Supp.2d at 722-23. Both are controlling questions on seminal issues in the case, and courts grant interlocutory appeals where the potential benefits of early resolution of questions of law significantly outweigh any delay and disruption caused by appellate review. Such are the questions proposed here.

> **b.    There is a Sufficiently Substantial Difference of Opinion on *Bleuler's* Meaning**

Section 1292(b)'s standard requires a "substantial ground for difference of opinion" on the issue for appeal. *Flowserve Corp.*, 444 F.Supp.2d at 723-24. *Gebardi*, *Castle*, and *Hoskins, discussed supra,* would dictate a result different from the one Judge Hoyt reached. Each of the two questions warrants attention. *See Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).[11] While Alvarado is convinced he is correct, the questions of law are "novel and difficult questions of first impression." *Flowserve Corp.*, 444 F. Supp. 2d at 724.

> **c.    An Immediate Appeal Would Materially Advance the Litigation**

A "key concern consistently underlying § 1292(b) decisions is whether permitting an interlocutory appeal will expedite the litigation." *Flowserve Corp.*, 44 F. Supp. 2d at 723 (cleaned up); citing *Ahrenholz*, 219 F.3d at 676); *see also* 16 Wright, Miller, § 3930 at 432 (citing cases). This standard is tied to the requirement that the order involve a controlling question of law. *Id.*

---

[11] Because "[d]egrees of legal doubt escape precise quantification," Note, *Interlocutory Appeals in the Federal Courts Under 28 U.S.C. § 1292(b)*, 88 Harv. L. Rev. 607, 623 (1975), that commentary proposed a standard "that would require a trial court to believe that a reasonable appellate judge could vote for reversal of the challenged order" before the disagreement would be considered substantial under § 1292(b). *See also Flowserve Corp.*, 444 F. Supp. 2d at 723 (citing commentary).

The institutional efficiency of the federal court system is among the chief concerns motivating Section 1292(b)." *Strougo v. Scudder, Stevens & Clark, Inc.,* Civil Action No. 96-2136, 1997 WL 473566, at *6 (S.D.N.Y. Aug.18, 1997) (citing *Forsyth v. Kleindienst*, 599 F.2d 1203 (3d Cir.1979)). Stated differently, Section 1292(b) is designed to minimize burdens "by accelerating or ... simplifying trial court proceedings." *Flowserve Corp*., 444 F. Supp. 2d at 723 (citing Wright, Miller, § 3930 at 439).

Questions 1 and 2 are controlling questions of law and answers to both might entail dismissal of all five charges against Alvarado. Additionally, given that potentially preclusive criminal proceedings against Alvarado have long been underway in Spain, this Court can best employ its scarce resources by declining to retain on its docket this complex case which can be readily dismissed on any of several solid grounds.

## II.   PRINCIPLES OF INTERNATIONAL COMITY AND ABSTENTION CALL FOR DISMISSAL.

A dismissal ruling pursuant to Section I is proper and should end this case against Alvarado. But international comity and related abstention principles of international comity also call for dismissal, especially in deference to the earlier-filed, parallel criminal litigation against Alvarado in Spain.

In Section II, Alvarado analyzes in depth the authorities and related tests for applying comity and abstention in analogous contexts. Not all of the authorities provided address a U.S. and parallel foreign proceeding, and none address parallel criminal proceedings, but the governing principles are similar across all contexts. Applying these factors to Alvarado's case suggests—indeed compels—dismissal under well-established comity and related abstention principles. Of particular import to the comity and abstention analysis are the existence of earlier filed parallel proceedings in Spain, the Spanish court's rejection of the Government's attempts to extradite

Alvarado, and the hardships to this Court, Alvarado, and counsel, of continuing this case simultaneously with the ongoing Spanish proceeding.

### A.     ANALYSIS OF ABSTENTION AND COMITY CASE LAW.

#### 1.     The Abuse of Discretion Standard.

In civil cases, a "district court may, and following common practice often does, stay the civil action until the pending or potential criminal case has been decided." *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007); *see also Walker v. Wilburn*, Civil Action No. 3:13-CV-4896-D, 2015 WL 5873392 at *3 (N.D. Tex. Oct. 5, 2015). Thus, if in the ordinary course the matter is left to the district court's sound discretion, "a court may decide in its discretion to stay civil proceedings when the interests of justice seem to require such action." *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995) (quoting *United States v. Kordel,* 397 U.S. 1, 12 n. 27 (1970)).

The Supreme Court has examined parallel civil cases in state and federal courts in defining the boundaries of the abstention doctrine "under which a District Court may decline to exercise [dismiss] or postpone [stay] the exercise of its jurisdiction." *Colorado River Water Cons. Dist. v. U.S.*, 424 U.S. 800, 813-14 (1976). In *Colorado River*, the Supreme Court cited *Burford* v. *Sun Oil Co.*, 319 U.S. 315 (1943) in deciding a case that "should have been dismissed by the District Court" because it implicated state law that a state court was already adjudicating. *Id.* at 814-15. "[W]eightier considerations of constitutional adjudication and state-federal relations" are more likely to "permit[] the dismissal of a federal suit due to the presence of a concurrent state proceeding." *Colorado River*, 424 U.S. at 818.

The Fifth Circuit is in accord, invoking the abstention doctrine "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result," *W. Gulf Mar. Ass'n v. Ila Deep Sea*

*Local 24*, 751 F.2d 721, 729 (5th Cir. 1985), and concluding that "a district court may dismiss an action where the issues presented can be resolved in an earlier-filed action pending in another district court." *Id.*

> Addressing federal-state abstention, the Supreme Court has explained as follows:
>
> [F]ederal courts have the power to refrain from hearing cases that would interfere with a pending state criminal proceeding, *see Younger v. Harris*, 401 U.S. 37 (1971), or with certain types of state civil proceedings, *see Huffman v. Pursue, Ltd.,* 420 U.S. 592 (1975); *Juidice v. Vail,* 430 U.S. 327 (1977); cases in which the resolution of a federal constitutional question might be obviated if the state courts were given the opportunity to interpret ambiguous state law, *see Railroad Comm'n of Tex. v. Pullman Co.,* 312 U.S. 496 (1941); cases raising issues "intimately involved with [the states'] sovereign prerogative" . . . *see Louisiana Power & Light Co. v. Thibodaux,* 360 U.S. 25, 28 (1959); *id.,* at 31 (Stewart, J., concurring); cases whose resolution by a federal court might unnecessarily interfere with a state system for the collection of taxes, *see Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293 (1943); and cases which are duplicative of a pending state proceeding, *see Colorado River,* 424 U.S. 800 (1976); *Pennsylvania v. Williams,* 294 U.S. 176 (1935).

*Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716–17 (1996).

## 2. Special Circumstances Warrant Greater Deference to Comity Principles.

In the context of federal-state abstention in property-related actions,[12] the Supreme Court has held that "[a]bdication of the obligation to decide cases can be justified under [the abstention] doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest." *Colorado River*, 424 U.S. at 813. The Court noted that abstention was appropriate in three categories of countervailing interests

---

[12] In civil disputes involving a res, the Fifth Circuit has held "[t]here are six factors that the court must balance on a case-by-case basis to determine whether exceptional circumstances warrant abstention: 1) assumption by either court of jurisdiction over a res, 2) relative inconvenience of the forums, 3) avoidance of piecemeal litigation, 4) the order in which jurisdiction was obtained by the concurrent forums, 5) to what extent federal law provides the rules of decision on the merits, and 6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction." *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 798 (5th Cir. 2014) (citing *Stewart v. W. Heritage Ins. Co.,* 438 F.3d 488, 491 (5th Cir. 2006)).

implicating state sovereignty: (1) "cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law," *id.*, at 814, (2) "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," *id.*, or (3) "where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been [improperly] invoked for the purpose of restraining state criminal proceedings" or "collection of state taxes." *Id.* at 816.

By contrast, a court must stay a civil proceeding pending resolution of a related criminal prosecution when "special circumstances" so require. *United States v. Lot 5, Fox Grove, Alachua County, Fla.*, 23 F.3d 359, 364 (11th Cir. 1994) (quoting *Kordel*). Determining what amounts to "special circumstances" may present a sliding scale, but based on the cited authorities, parallel criminal cases pending in two countries would be the most exceptional of circumstances.

### 3.  Special Circumstances Require Deference to Foreign Criminal Cases.

Comity and abstention concerns appear to weigh heavier when a criminal case is involved, and even more so in the international context. If two civil cases involving private parties are pending, respectively, in domestic and foreign jurisdictions, the overriding consideration becomes international comity. International comity is respect for sovereign governments' central functions. *Royal and Sun Alliance Ins. Co. of Canada v. Century Intern. Arms, Inc.*, 466 F.3d 88, 94 (2nd Cir. 2006). A foreign country's sovereign interest in enforcing its own criminal laws constitutes an even more exceptional circumstance. The Fifth Circuit has held that "[a] sovereign nation has exclusive jurisdiction to punish offenses against its laws committed within its borders unless it expressly or impliedly consents to surrender its jurisdiction." *United States v. Kun Yun Jho*, 534 F.3d 398, 405 (5th Cir. 2008) (quoting *Wilson v. Girard*, 354 U.S. 524, 529 (1957) (where Japan had ceded to the U.S. jurisdiction to try American military personnel for conduct constituting an

offense against the laws of both countries)); see also *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 804 (5th Cir. 2007) (affirming dismissal of civil case in favor of Mexican forum); *PCL Civil Constructors, Inc. v. Arch Ins. Co.*, 979 F.3d 1070, 1073 (5th Cir. 2020) (stating "*forum non conveniens* is a doctrine under which a court may decline to exercise its jurisdiction and dismiss a case that is otherwise properly before it so the case can be adjudicated in another forum"). "[A] court may dismiss a case in favor of a foreign forum if the defendant establishes that the convenience of the parties and the Court, coupled with the interests of justice, indicate that the lawsuit is better suited for adjudication elsewhere." *S & D Trading Academy, LLC v. AAFIS, Inc.*, 494 F. Supp. 2d 558, 570 (S.D. Tex. 2007) (citing *Keating v. Finch Shipping Co., Ltd.*, 265 F.3d 258, 268 (5th Cir. 2001)), *800537 Ontario, Inc. v. World Imports U.S.A. Inc.*, 145 F. Supp. 2d 288, 290 (W.D.N.Y. 2001) ("This court has the inherent power to stay any further proceedings in the instant civil action in favor of the Canadian criminal litigation") (citing *Landis v. North American Co.,* 299 U.S. 248 (1936)).

The deference to states' sovereign rights, also described as "federalism," is analogous to the deference to foreign nations' sovereign rights or "international comity." In the context of states' rights, courts often use the terms "comity" and "federalism" interchangeably: "Comity and federalism require federal courts not to interfere with ongoing state criminal proceedings, barring extraordinary circumstances," *Younger v. Harris*, 401 U.S. at 43-54 and "surely considerations of comity and federalism require that [federal courts] give effect to important and legitimate [state] concerns" so as not to "unduly interfere with the legitimate activities of the States." *Francis v. Henderson*, 425 U.S. 536, 541–42 (1976) (citing *Younger v. Harris,* 401 U.S. at 44); *see also United States v. Composite State Bd. of Med. Examiners, State of Ga.*, 656 F.2d 131, 136 (5th Cir.

1981) ("Whether it is labeled 'comity', 'federalism', or some other term, it is the unnecessary conflict between state and federal governments that is sought to be avoided").

Mirroring its view of states' sovereignty over tax collection, the Supreme Court has held that U.S. courts should abstain from "enforcing the tax laws of foreign sovereigns," *Pasquantino v. United States*, 544 U.S. 349, 362 (2005), and from foreign bankruptcy proceedings in which "a foreign nation's interest in the equitable and orderly distribution of a debtor's property is an interest deserving of particular respect and deference." *Royal and Sun Alliance Ins. v. Century Intern.* 466 F.3d at 92-93. In *Mujica*, 771 F.3d at 615, the Ninth Circuit elevated concerns about international comity above similar concerns of domestic comity, affirming the district court's judgment of dismissal of state-law claims "on the ground of international comity."[13]

---

[13] As explained in *Fishman Jackson PLLC v. Israely*, 180 F. Supp. 3d 476, 485-86 (N.D. Tex. 2016), the discretionary standard of *Colorado River* likely applies only to federal-state abstention, and not U.S.-foreign abstention or international comity. While the Fifth Circuit has not yet applied *Colorado River* to parallel civil proceedings in foreign nations, district courts within the Fifth Circuit have. *See e.g., Compass Bank v. Werner*, No. CV L-12-37, 2013 WL 12190204, at *5 (S.D. Tex. Apr. 2, 2013) (citing *Noble Drilling Servs. v. Noble Denton Marine, Inc.,* No. 4:09-CV-3074, 2010 WL 1790202, at * 4 (SDTX May 4, 2010) ("Although most courts consider abstention in the context of parallel state court proceedings, several courts have used the *Colorado River* abstention framework when deciding whether to abstain from exercising jurisdiction in the face of parallel foreign proceedings"); *Intelligender, LLC v. Soriano*, 2011 WL 903342 at * 8 (E.D. Tex., March 15, 2011). District courts in Texas that have determined foreign proceedings to be parallel have then used the following four-part framework applying *Colorado River* to determine "exceptional circumstances" in U.S. *civil* proceedings: (1) the order the suits were filed, (2) the relative inconvenience of the federal forum, (3) the source of law in the case, and (4) the progress of the two proceedings. *Noble Drilling Servs*., 2010 WL 1790202, at *4 (citations omitted; cleaned up); *Novasparks SA v. Enyxfpga*, 344 F.Supp.3d 666, 677-78 (S.D.N.Y. 2018) (quoting *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012)) (internal quotations omitted).

Other courts examining whether to dismiss or stay civil suits on grounds of international comity balance several factors: (1) the adequacy and availability of the alternate forum, (2) the potential prejudice to either party, (3) the convenience of the parties, (4) the connection between the litigation and the United States, and (5) the connection between the litigation and the foreign jurisdiction. *Royal and Sun Alliance Ins. v. Century Intern*, 466 F.3d at 94; *Frhueb, Inc. v. de Freitas Abdala*, 21-CV-7395 (RA) (KHP), at *5 (S.D.N.Y. Sep. 30, 2022) (staying the U.S. civil suit) (citing *Royal & Sun Alliance*, 466 F.3d at 94)).

For *two parallel civil cases* (one of them foreign) with a commercial element, the Ninth Circuit created a seven-factor test "better adapted to the *commercial context*": "[1] the degree of conflict with foreign law or policy, [2] the nationality or allegiance of the parties and the locations or principal places of businesses or corporations, [3] the extent to which enforcement by either state can be expected to achieve compliance,

2e79d9cc3b9e5d45

The Eleventh Circuit has explained that foreign parallel litigation is exceptional, noting that the "relationship between the federal courts and the states (grounded in federalism and the Constitution)"—which animated the *Colorado River* analysis—"is different from the relationship between federal courts and foreign nations (grounded in the historical notion of comity)." *Posner v. Essex Ins. Co., Ltd.,* 178 F.3d 1209, 1223 (11th Cir. 1999). "Based on that distinction, the Eleventh Circuit has developed a discretionary standard for dismissing or staying proceedings in the presence of favor of foreign parallel litigation—a standard that does not require exceptional circumstances." *Clientron Corp. v. Devon IT, Inc.*, Civil Action No. 13-05634, 2014 WL 940406, at *8 (E.D. Pa. Mar. 10, 2014). This reasoning gains considerable power when the parallel proceeding involves not only a foreign sovereign as a charging party, but also its core interest in enforcing its own criminal laws. *See Lexington Ins. Co. v. Forrest*, 263 F. Supp. 2d 986, 1002-03 n.13 (E.D. Pa. 2003), because "international comity . . . allows courts to exercise discretion to dismiss when a 'parallel' action is pending in a foreign forum." *Copia Commc'ns, LLC v. AMResorts, L.P.*, 812 F.3d 1 (1st Cir. 2016). For some courts, no further analysis to demonstrate "exceptional circumstances" is necessary.

## B.     APPLICATION OF CASE LAW TO FACTS IN THIS CASE.

The cited authorities show that different courts have formulated the pertinent tests in various contexts. Although these contexts are not exactly like Alvarado's criminal proceedings, all courts focus on the same central ideas, and draw from the same precedents and historical analyses, in formulating the pertinent factors. Alvarado has distilled those multiple factors into seven factors and applied them to the facts of this case, with some additional case law references, as follows.

---

[4] the relative significance of effects on the United States as compared with those elsewhere, [5] the extent to which there is explicit purpose to harm or affect American commerce, [6] the foreseeability of such effect, and [7] the relative importance to the violations charged of conduct within the United States as compared with conduct abroad." *Mujica v. Airscan Inc.*, 771 F.3d at 603 n.20. (9th Cir. 2014).

### 1.      Deference to Spain's Sovereignty Requires Dismissal.

The doctrine of international comity "counsels voluntary forbearance when a sovereign which has a legitimate claim to jurisdiction concludes that a second sovereign also has a legitimate claim to jurisdiction under principles of international law." *United States v. Nippon Paper Indus. Co., Ltd.,* 109 F.3d 1, 8 (1st Cir. 1997). "Comity is a rule of practice, convenience, and expediency rather than of law that courts have embraced to promote cooperation and reciprocity with foreign lands." *Mujica*, 771 F.3d at 598 (citing *Pravin Banker Assocs., Ltd. v. Banco Popular del Peru,*109 F.3d 850, 854 (2d Cir.1997). Generally, U.S. courts  "defer to proceedings taking place in foreign countries, allowing those acts and proceedings to have extraterritorial effect in the United States." *Gross v. German Found. Indus. Initiative,* 456 F.3d 363, 392 (3d Cir. 2006); *Pravin,* 109 F.3d at 854. "[C]omity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect." *Phila. Gear Corp. v. Phila. Gear de México, S.A.* 44 F.3d 187, 191 (3d Cir. 1994). For those reasons, when competing sovereigns' prosecutorial functions are in play, the principles underlying the doctrine of comity are at their height.

### 2.      Consideration of Spain's Core Policy Prerogatives Mandates Dismissal.

The general presumption against extraterritorial application of U.S. law recognizes that "United States law governs domestically but does not rule the world." *Microsoft,* 550 U.S. at 454. Comity similarly rests on respect for the legal systems of members of the international legal community—a kind of international federalism—and thus "serves to protect against unintended clashes between our laws and those of other nations which could result in international discord." *Equal Employment Opportunity Cmm'n v. Arabian American Oil Co.,* 499 U.S. 244, 248 (1991); *see also Mujica*, 771 F.3d at 604-05 (citing cases).

Spain's interest in enforcing its criminal laws represents a sovereign interest at its zenith. "[W]hether the action is civil or criminal; whether it sounds in tort, contract, or property; and whether the conduct is a regulatory violation or is a violation of international norms against torture, war crimes, or slavery," courts have noted that such "inquiries may inform our judgment of the importance of the issue to the United States or to an individual state. The closer the connection between the conduct and core prerogatives of the sovereign, the stronger that sovereign's interest." *Mujica*, 771 F.3d at 606 (citing *Sosa v. Álvarez–Machaín,* 542 U.S. 692, 731–33 (2004); *Filártiga v. Peña–Irala,* 630 F.2d 876, 890 (2d Cir.1980)).

"Foreign states, no less than the United States, have legitimate interests in regulating conduct that occurs within their borders, involves their nationals, impacts their public and foreign policies, and implicates universal norms." *Mujica*, 771 F.3d at 607 (citing *Mich. Cmty. Servs., Inc. v. NLRB,* 309 F.3d 348, 356 (6th Cir.2002)). "Accordingly, courts have considered the territoriality of the questioned activity, its effects, the nationality of the parties, and the interests of the foreign state when deciding whether to exercise jurisdiction." *Id*.

The Supreme Court has dictated that both "comity and the orderly administration of criminal justice, may 'require a federal court to forgo the exercise'" of its equitable, prudential, and discretionary powers in deference to foreign criminal proceedings. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) (discussing *habeas corpus* power) (citing *Francis v. Henderson*, 425 U.S. at 539); *see also United States v. Morton*, 314 F. Supp. 2d 509, 514 (D. Md. 2004) (declining jurisdiction over a crime committed in a United States-leased German facility because there was no evidence the German authorities intended to cede concurrent or exclusive jurisdiction to the U.S. authorities).

The Supreme Court's pronouncement in *Munaf* is consistent with the law of nations, which "permits the exercise of criminal jurisdiction by a nation under five general principles," including the nationality principle, pursuant to which a country like Spain "may supervise and regulate the acts of its citizens both within and without its territory." *United States v. Lawrence*, 727 F.3d 386, 394 (5th Cir. 2013) (citation omitted). "Absent a clear statement of the affirmative intention of the Congress, this Court ordinarily does not read statutes to reach conduct that is the primary concern of a foreign country." *Pasquantino v. U.S.*, 544 U.S. at 378-79 (Ginsburg and Breyer dissenting) (citations omitted). Courts extend similar deference to U.S. military tribunals and Congress' expressed intentions that "civilian courts should not interfere with the military chain of command—not, that is, without statutory authority." *Vance v. Rumsfeld*, 701 F.3d 193, 199 (7th Cir. 2012).

Here, the Government has not asserted that Spain consented to surrender its jurisdiction over Alvarado for the acts alleged in the Indictment. To the contrary, Spain's highest criminal court expressly refused the Government's assertion of extraterritorial jurisdiction over Alvarado. "An American court must give great deference to the determination of the foreign court in an extradition proceeding." *Casey v. Department of State*, 980 F.2d 1472, 1477 (D.C. Cir. 1992).

Alvarado, like the defendant in *Munaf*, is "the subject of ongoing [] criminal proceedings" in a foreign forum. *Id*. at 694. The *Munaf* Court saw no distinction between a convicted and unconvicted defendant in applying the rule of deference to the foreign sovereign.[14] Yet *Munaf* also involved an unconvicted defendant, as is the case with Alvarado. The *Munaf* Court held that "[g]iven these facts," "our cases make clear that [the foreign sovereign] has a sovereign right to prosecute [both defendants] for crimes committed on its soil." *Id*. The *Munaf* Court stated that a

---

[14] Similarly, the Court said, "[i]t did not matter that the habeas petitioners in *Wilson* and *Neely* had not been convicted." *Munaf*, 553 U.S. at 698 (citing 354 U.S. at 525–526 and 180 U.S. at 112–113).

foreign nation has "plenary criminal jurisdiction" even as against Americans "'who commit offenses against its laws within its territory.'" *Id.* (citing *Reid v. Covert*, 354 U.S. 1, 15, n. 29 (1957) (opinion of Black, J.); *see also Kinsella v. Krueger*, 351 U.S. 470, 479 (1956) ("nations have a sovereign right to try and punish foreigners for offenses committed within their borders unless they have relinquished jurisdiction to do so").

What drove the *Munaf* Court's holding in meaningful part was a special interest to avoid sensitive and direct foreign policy considerations and potential conflicts. The *Munaf* Court stated that, "[g]iven that the present cases involve habeas petitions that implicate sensitive foreign policy issues in the context of ongoing military operations, reaching the merits is the wisest course," *see Munaf*, 553 U.S. at 692, and "[i]n contrast [to courts], the political branches are well situated to consider sensitive foreign policy issues," *id.* at 702. Recognizing this, Congress deferred to foreign sovereigns by carving out of the FCPA  exception for foreign officials not present in the U.S. during the course of the scheme.

While PDVSA elected to proceed in the Spanish forum by joining the Spanish government's court-instructed criminal proceedings under investigation there, it is difficult to argue the Government's continuing prosecution of Alvarado does not interfere with Spain's sovereign authority. *Cf. Munaf*, 553 U.S. at 698 (noting "release [of parties in custody] of any kind would interfere with the sovereign authority of Iraq 'to punish offenses against its laws committed within its borders'") (citing *Wilson v. Girard*, 354 U.S. at 529).

Article V(A)(1) of the U.S.-Spain Extradition Treaty establishes that Spain shall not extradite an individual "when the person whose surrender is sought" is being prosecuted in Spain. That is Alvarado's situation. He is under criminal investigation in Spain in a court-instructed proceeding where Spain is one of the accusing parties.

Moreover, the European Union, of which Spain is a member, has its own internal double jeopardy framework in its Charter of Fundamental Rights (the "Charter"). Article 50 of the Charter provides that "No one shall be liable to be tried or punished again in criminal proceedings for an offense for which he or she has already been finally acquitted or convicted within the Union in accordance with the law." *See* EuroJust, "Case-Law by the Court of Justice of the European Union on the Principle of *ne bis in idem* in Criminal Matters" (December 2021) (collecting cases).[15]

In the FCPA, Congress addressed the extent of U.S. foreign policy interests in this context by limiting U.S. extraterritorial jurisdiction over foreign officials positioned as Alvarado was. *See* Section I above. That determination is consistent with the law cited here in consideration of international comity and abstention.

### 3. Deference to First Filed, Most Advanced Litigation in an Adequate and Available Forum Compels Dismissal.

Courts accord significant weight to the first-filed suit. *Frhueb, Inc. v. De Freitas Abdala*, 2022 WL 7150242 at *3; *Ontario, Inc.,* 145 F. Supp. 2d at 288, 291 ("principles of comity counsel that priority generally goes to the suit first filed"). In the context of federal-state abstention of one civil case for another, "the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts." *Colorado River*, 424 U.S. at 818. As set out below, the Spanish criminal complaint against Alvarado was filed first.

Also important is "how much progress has been made in the two actions." *Frhueb*, at *3. Alvarado set out in his Reply in Support of his Motion to Dismiss that the Spanish proceedings are more advanced than these proceedings.[16]

---

[15] https://www.eurojust.europa.eu/sites/default/files/assets/2021_12_08_cjeu_case_law_on_ne_bis_in_idem.pdf.

[16] Indeed, even in the context of two cases in the U.S., "[a] stay of a civil [second-filed] case is most appropriate where a party to the civil case has already been indicted [in a first-filed criminal case] for the

Courts also consider the adequacy and availability of the alternative forum. *See Perforaciones*, 356 F. App'x at 679. "Adequacy" means the defendant is "amenable to process in the other jurisdiction." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981). "Adequacy" does not "require that the alternative forum provide the same relief as an American court." *DTEX, LLC v. BBVA Bancomer, S.A*., 508 F.3d at 785. "An alternative forum is 'adequate' where it offers at least some relief." *León v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001). The alternative forum "need not be a perfect forum." *Id.* at 1312.[17] "[T]he adequacy of a foreign forum's substantive laws is presumed, absent any showing to the contrary." *Adams v. Merck & Co., Inc*., 353 Fed.App'x. 960, 962 (5th Cir.2009).

Spain is an adequate forum. *See Pesquera v. Pérez*, Case No. 20-CV-02128-LHK, 2021 WL 254193 (N.D. Cal. Jan. 26, 2021) (holding Spain is an adequate forum); *In re Air Crash at Madrid, Spain*, 893 F. Supp. 2d 1020, 1030 (C.D. Cal. 2011) (dismissing multidistrict litigation case on *forum non conveniens* grounds because "Spain is an available and adequate alternative forum"), *aff'd sub. nom., Fortaner v. Boeing Co*., 504 F. App'x 573 (9th Cir. 2013); *Melgares v. Sikorsky Aircraft Corp*., 613 F. Supp. 2d 231 (D. Conn. 2009) (holding Spain is an adequate forum); *Huertas v. Kingdom of Spain*, Civil Action No. 05-627 (RWRAK), 2006 WL 785302 at *5, (D.D.C. Mar. 27, 2006) (holding "Spain presents an adequate alternative forum").

Spain is an available forum, and drawing from the analogous *forum non conveniens* analysis, a defendant's "submission to the jurisdiction" of the foreign court "renders that forum

---

same conduct." *Walker v. Wilburn*, Civil Action No. 3:13-CV-4896-D, 2015 WL 5873392 at *15 (N.D. Tex. Oct. 5, 2015) (citation omitted).

[17] For example, "the lack of jury trials or depositions [does not] render a forum inadequate." *Akerblom v. Ezra Holdings Ltd.*, No. 4:11-CV-00694, 2012 WL 464917, at *3 (S.D. Tex. Feb. 13, 2012), *aff'd*, 509 F. App'x. 340 (5th Cir. 2013) (citing *Zermeno v. McDonnell Douglas Corp*., 246 F.Supp.2d 646, 659 (S.D.Tex. 2003)).

available." *Akerblom*, 2012 WL 464917, at *3      (citing *In re Ford Motor Co.*, 591 F.3d 406, 412

(5th Cir. 2009)). Alvarado, a Spanish citizen, has submitted to the Spanish court's jurisdiction;

dismissal here is proper.

### 4.    Parallelism Between the Two Cases Counsels Dismissal.

The parallel Spanish proceeding against Alvarado is, like this one, a criminal proceeding

alleging public corruption. The Spanish case arises out of U.S. persons' alleged payments to obtain

preferential treatment from the Venezuelan government in bidding for contracts and in receiving

invoice payments. The Spanish proceeding was initiated by the Spanish Special Prosecutor Against

Corruption and Organized Crime (in Spanish, the Fiscalía Especial contra la Corrupción y la

Criminalidad Organizada, and hereinafter referred to as the "Spanish Prosecutor") on June 21,

2017. PDVSA filed a separate criminal complaint in Spain against Alvarado on May 30, 2017.

The PDVSA complaint was consolidated with the Spanish Government's complaint.

Consequently, a comprehensive parallel Spanish criminal proceeding was already underway when

the Superseding Indictment adding Alvarado was returned.

Alvarado has raised the point several times that the Government neglected to show the

Grand Jury the documents and other information he had provided the U.S. Departments of Justice

and State years before the Indictment was returned. And the documents and records related to

PDVSA's board of directors' resolutions awarding contracts and operational commitment awards

have been the subject of two court orders for the production of documents issued by the Spanish

court to PDVSA on November 17, 2020, and  March 5, 2024. A copy of the March 5, 2024 order

from the Juzgado Central de Instrucción Nº 003, in Madrid, is attached as Exhibit A.

Given the parallel Spanish proceeding and Spain's stated decision to retain sovereignty

over Alvarado's case, Spain's highest criminal court rejected the Government's request for

Alvarado's extradition. Despite those facts, the Government has characterized the Spanish proceedings as a "suit filed by PDVSA against Defendant [that] is in no way running parallel with the government's long-running investigation into bribery and corruption at PDVSA ..." Govt. Resp. at 10, n.5. At best, this characterization is incorrect, if not deliberately misleading. The charging document in Spain, as here, is a criminal complaint. Spain's highest criminal court, the Sala de lo Penal, is hearing Alvarado's case. The Sala de lo Penal rejected the same arguments the Government makes here, holding that the facts at issue in the Spanish proceedings were closely related to those at issue in the Government's Superseding Indictment. And given this, as Alvarado has addressed in prior filings, the Sala de lo Penal found it more coherent that the U. S. submit its criminal complaint to the Spanish authorities in order that Spain could adjudicate it. That is, the Spanish authorities determined that the dispute between two sovereigns be resolved by the U.S. transmitting its concerns to the Spanish authorities. Such determination weighs in favor of dismissal of this case in deference to the earlier filed, active Spanish proceedings against Alvarado.

### 5. Hardship to the Respective Courts and the Efficient Use of Judicial Resources Strongly Counsels Dismissal.

Deference to international comity promotes judicial efficiency by placing the parties and claims before a single tribunal, thereby reducing duplicative discovery and litigation, in order that the allegations may be tried on the merits as nearly as possible. *See National Union Fire Ins. Co. of Pittsburgh, PA v. Kozeny*, 115 F. Supp. 2d 1243, 1247-48 (D. Colo. 2000) (citing *Evergreen*, 954 F. Supp. at 104). Maintaining two concurrent and simultaneous proceedings consumes a great amount of judicial, administrative, and party resources for only speculative gain. *Perforaciones*, 356 F. App'x. at 680 (considering whether a case would overburden a court's docket or whether a resource-intensive jury trial would be necessary). Moreover, unlike situations in which both parallel proceedings are in the U.S., there could be little or no streamlining of either one of

Alvarado's proceedings in both countries through a ruling or plea in one of the countries. *Cf. Alcalá v. Texas Webb County,* 625 F. Supp. 2d 391, 4406 (S.D. Tex. 2009) (noting "there would be little streamlining" of the civil case before it if the parallel criminal proceedings established the movant's guilt).

The hardship to this Court in maintaining the Indictment against Alvarado is great. In the first place, Alvarado would not be present at trial given Spain's refusal to extradite him to the U.S. Trying a criminal case against an absent defendant presents obvious complexities and waste of judicial resources. Moreover, there would be language problems, and translators and interpreters would be essential. The Spanish court is conducting its proceeding entirely in Spanish, the majority of the documentation the parties or others submit will also be in Spanish, and Spanish is the first, or native, language of the principal witnesses. It is highly unlikely Alvarado can "persuade European third-party witnesses to testify in Houston" rather than in Spain. *See Marnavi Splendor GMBH & Co. KG v. Alstom Power Conv., Inc.*, 706 F. Supp. 2d 749, 757 (citing *Empresa Líneas Marítimas Argentinas, S.A. v. Schichau–Unterweser, A.G.*, 955 F.2d 368, 375 (5th Cir.1992) (contrasting the potential difficulty in obtaining attendance of defendant's former employee witnesses with the likely attendance of employees of a corporation that had agreed to cooperate with the plaintiff); *Tjontveit v. Den Norske Bank ASA*, 997 F.Supp. 799, 808 (S.D.Tex.1998) (noting the importance of considering key witnesses, "especially third-party witnesses").

Additionally, "[t]he Supreme Court has indicated the importance of live testimony: 'Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants.'" *Marnavi Splendor*, 706 F. Supp. 2d at 757 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) and *Pérez & Compañía (Cataluña), S.A. v. M/V Mexico I*, 826 F.2d 1449,

42

1453 (5th Cir.1987) (noting same in response to plaintiff's assertion that testimony could be obtained by affidavits)).

As a practical matter and to his prejudice, Alvarado would not be able to secure live testimony in the U.S. The Spanish proceedings are being conducted in Spanish; the transcript will be in Spanish; and, all evidentiary rulings and the bases for them will be in Spanish. They would need to be translated for the Court and for the jury. The respective demands of the parallel proceedings might require this Court to engage in painstaking coordination with the Spanish tribunal should the needs of both overlap for common witnesses, documents, and scheduling. The demands of the parallel cases might require Alvarado's counsel to be in two places at once in order to serve the client effectively. Counsel and this Court might have to introduce witness testimony from the Spanish proceeding to show conflicts with or confirmation of testimony here, and this Court might well be put in the position of having to explain the fact and implications of the Spanish proceeding to the U.S. jury, increasing the confusion and denying Alvarado his rights as a defendant. The list could go on, but the essence is that a trial *in absentia* in the U.S. could well prove to be a grossly wasteful Sisyphean exercise.

### 6.    Considerations of Due Process and Fundamental Fairness to Alvarado Mandate Dismissal.

Citizenship is also a factor. A court in a civil case "should take account of whether any of the parties are U.S. citizens or nationals, and also whether they are citizens of the relevant state." *Mujica*, 771 at 605. This because "the weaker the nexus between the challenged conduct and U.S. territory or U.S. parties, the weaker the justification for adjudicating the matter in U.S. courts and applying U.S. federal or state law." *Mujica*, 771 F.3d at 605-06. Alvarado is not a U.S. citizen or national. PDVSA asserts that it is the aggrieved party in the alleged corruption scheme,

alleging it was caused to pay too much for goods and services, yet PDVSA is not a U.S. corporation.

To the extent this Court allows the case against Alvarado to proceed, he is entitled to Fifth Amendment rights, even if he was not in the U.S. at any time during the alleged criminal offense. *See Sánchez-Llamas v. Oregon*, 548 U.S. 331, 350 (2006) (citing *Wong Wing* v. *United States*, 163 U. S. 228, 238 (1896) ("[A]ll persons within the territory of the U.S. [as Alvarado would be if extradited] are entitled to the protection guaranteed by" the Fifth and Sixth Amendments)); *United States v. Husband R*, 453 F.2d 1054, 1058 (5th Cir. 1971) ("In areas under the jurisdiction of the U.S. to which the Fifth Amendment is applicable, an alien is entitled to its protection to the same extent as a citizen," citing *Galvan v. Press*, 347 U.S. 522 (1954)). This would introduce a multitude of complications were Alvarado to be extradited and tried here before the Spanish proceedings concluded, not the least of which would be the right to avoid self-incrimination.

### 7. Consideration of Res Judicata and Collateral Estoppel Complexities Strongly Favor Dismissal.

With all due deference, this Court should consider the legal landscape that would exist if the Spanish case is decided before this case, or vice versa. In either situation, the result would most likely require a complex and, perhaps, dizzying analysis of the legal effect of the findings and conclusions that might be reached in Spain and would then need to be translated into English and analyzed to determine their applicability on res judicata or collateral estoppel grounds in the U.S. proceedings.[18] In considering these issues in other instances, the Fifth Circuit has used the five

---

[18] In *U.S. v. Kashamu*, 656 F.3d 679, 681 (7th Cir. 2011), the Court considered "the collateral estoppel effect, if any, of findings made by foreign courts in extradition proceedings." The court concluded that a foreign judgment could effect collateral estoppel: "All that matters is that if his defense of collateral estoppel is sound, it not only is a defense to the criminal charge against him but also protects him from extradition, the immediate sequel to which would be a criminal trial." *U.S. v. Kashamu*, 656 F.3d at 682-83. "When the foreign judiciary is respected, . . . and the rule on which the finding sought to be given preclusive effect is

factors it spelled out in *Hilton v. Guyot,* 159 U.S. 113, 205-06 (1895). The *Hilton* court held as follows:

> "Under the principles of [retrospective] international comity, a foreign court's judgment on a matter is conclusive in a federal court when (1) the judgment was rendered by a court of competent jurisdiction, which had jurisdiction over the cause and the parties; (2) the judgment is supported by due allegations and proof; (3) the relevant parties had an opportunity to be heard; (4) the foreign court follows the procedural rules, and (5) foreign proceedings are stated in a clear and formal record."

*Id.; see also International Transactions*, *Ltd*. *v*. *Embotelladora Agral Regiomontana*, *SA de CV*, 347 F.3d 589, 594 (5th Cir. 2003); and *Overseas Inns S.A. P.A. v. U.S.*, 911 F.2d 1146, 1148 (5th Cir. 1990). An analysis of the application of those factors here would have to wait for issuance of most, if not all, of the Spanish findings and conclusions.

An important consideration, then, is the alleged wrongful conduct's similarity in each of the parallel proceedings as to the common defendant. Though the involvement of both a foreign sovereign and a criminal charge raises issues of double jeopardy, Article V(A) of the U.S.-Spain Extradition Treaty[19] makes clear that Spain and the U.S. have an interest in avoiding the sovereign-to-sovereign equivalent of double jeopardy. Article V(A) states "[e]xtradition shall not be granted . . . 1. When the person whose surrender is sought is being proceeded against or *has been tried and discharged or punished* in the territory of the requested Party *for the offense* for which his extradition is requested. 2. When the person whose surrender is sought has been tried and acquitted or has undergone his punishment in a third State *for the offense* for which his extradition is requested." (Emphases supplied)

---

based [does not] offend a strong U.S. policy, the federal courts should defer to that finding." *Kashamu*, 656 F.3d. at 683.

[19] https://www.state.gov/wp-content/uploads/2019/02/10-201.21-Spain-EU-Extradition-Treaty.pdf

Such treaty provisions are "commonly termed 'double jeopardy' clauses" and "have become common to most extradition treaties," *Sindona v. Grant*, 619 F.2d 167, 177 (2d Cir. 1980) (citation omitted) (citing Treaty on Extradition Between the United States and Spain, 22 U.S.T. 737, T.I.A.S. 7136 (1971) (Article V(1)). "[S]uch treaty restrictions derive from the fundamental norm of *non bis in idem*." *Id.* The terms "same offense" and "same conduct" are subject to broad interpretative leeway. *Id.* So, the meaning of "same conduct" may "range from 'identical acts' to 'multiple acts committed in more than one place and at different times but related by the actor's initial design'" and the meaning of "'same offenses' may range from 'identical charges' to 'related . . . but not included [offenses].'" *Id.* Accordingly, the *Sindona* court held that the district court was correct "in adopting what it termed "a modified and more flexible test of whether the same conduct or transaction underlies the criminal charges in both transactions.'" *Id.* at 178.

In *U.S. v. Kashamu*, 656 F.3d 679, 681 (7th Cir. 2011), the court considered "the collateral estoppel effect, if any, of findings made by foreign courts in extradition proceedings." The court concluded that a foreign judgment could affect collateral estoppel, holding that: "All that matters is that if his defense of collateral estoppel is sound, it not only is a defense to the criminal charge against him but also protects him from extradition, the immediate sequel to which would be a criminal trial." *U.S. v. Kashamu*, 656 F.3d at 682-83. "When the foreign judiciary is respected, ... and the rule on which the finding sought to be given preclusive effect is based [does not] offend a strong U.S. policy, the federal courts should defer to that finding." *Kashamu*, 656 F.3d. at 683.

### C.     DISMISSAL RATHER THAN STAY IS THE SOLUTION HERE.

The law requires dismissal, rather than a stay (1) upon a finding that there is parallel litigation pending in a foreign forum or, even absent such, (2) when allowing a case to proceed in the U.S. intrudes on foreign government interests. *See Ungaro-Benages v. Dresdner Bank AG,* 379

F.3d 1227, 1238 (11th Cir. 2004); *Caspian Invs., Ltd. v. Vicom Holdings, Ltd.,* 770 F. Supp. 880, 884 (S.D.N.Y. 1991) (dismissing federal action pending Irish litigation); *Continental Time Corp. v. Swiss Credit Bank,* 543 F. Supp. 408, 410 (S.D.N.Y. 1982) (dismissing federal action in favor of Swiss action where the foreign proceeding was filed first and the cases present a "risk of inconsistent decisions"); and *Zybertech Constr. Software Servs. Ltd v. Shenner*, Civil Action No. 3:21-CV-2937-N, 2023 WL 1806019, at *3 (N.D. Tex. Feb. 7, 2023) (dismissing civil action without prejudice on grounds of comity). The *Ungaro–Benages* court made it clear. 379 F.3d at 1238-39. Affirmative answers to questions concerning prospective comity routinely require the dismissal of an indictment. *Id.*

The analysis above is restricted to "adjudicatory comity," that is, how judges apply these principles. Prescriptive comity is something different. It is understood "as a canon of construction … [that] might shorten the reach of a statute."[20] In other words, prescriptive comity "asks a question of statutory interpretation: should a court presume that Congress, out of respect for foreign sovereigns, limited the application of domestic law on a given set of facts?" *Id.* (citing *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 817 (1993) (Scalia, J., dissenting)). Prescriptive comity is the respect sovereign nations afford each other by limiting laws' reach, regardless of the individual case's facts.

Congress built prescriptive comity into the FCPA by excluding from the Act's reach foreign officials not present in the U.S. during the alleged scheme's course. Congress rejected any

---

[20] *In re Picard*, 917 F.3d 85, 100-01 (2d Cir. 2019). Adjudicative comity "may be viewed as a discretionary act of deference by a … court to decline to exercise jurisdiction in a case properly adjudicated in a foreign state, the so-called comity among courts," even if the statute permits the exercise of jurisdiction. Adjudicative comity "asks whether, where a statute might otherwise apply, a court should nonetheless abstain from exercising jurisdiction in deference to a foreign nation's courts that might be a more appropriate forum for adjudicating the matter." *Id.* (citing *Royal & Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 93 (2d Cir. 2006)); *See also Mujica v. AirScan Inc.*, 771 F.3d at 600-01(citing *Ungaro–Benages,* 379 F.3d 1227, 1238).

47

U.S. interest in prosecuting foreign officials for bribes when it approved the FCPA's final text, and upon each successive amendment Congress spared foreign nations the indignity of the U.S. prosecuting their officials when the officials had not been in the U.S. during the alleged scheme's course. Here, the Government is attempting to prosecute Alvarado through the AMLA citing the FCPA as the specified unlawful activity. The Government is doing so at the same time prosecution for the same thing by his adopted country, Spain, is well underway. This circumstance, *per se*, warrants the U.S. case's dismissal.

This circumstance is also a prime example of the concern with which Congress wrestled in excluding from the FCPA's definition of a "person" a foreign official not present in the U.S. during an alleged scheme's course. This Court has to "presume that Congress, out of respect for foreign sovereigns, limited the application of domestic law on a given set of facts," *Id.* This is the essence of what is called "prescriptive comity." By enacting the FCPA exclusion, Congress effectively took decisions about deference to foreign sovereigns in circumstances such as this out of the courts' hands, and legislatively mandated deference, and, ineluctably, dismissal.

### D.   IF THE COURT DOES NOT RULE IN ALVARADO'S FAVOR ON INTERNATIONAL COMITY, IT SHOULD CERTIFY QUESTION 3 TO THE FIFTH CIRCUIT.

If this Court rules against Alvarado on comity, Alvarado respectfully requests this Court to certify Question 3, as follows:

Should the U.S. Government's prosecution of Alvarado be dismissed on international comity grounds in deference to the ongoing Spanish proceeding?

As stated above with regard to Questions 1 and 2, Title 28 § 1292(b) sets forth a three-factor analysis for a district judge to allow an order's appeal. Appeal is proper if the order "[1] involves a controlling question of law [2] as to which there is substantial ground for difference of

opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

Question 3 is a controlling question of law. Granting the Motion and ordering dismissal would end the Government's case against Alvarado. Second, given that courts have not expressly articulated the standard to apply in the context of parallel criminal proceedings in different countries, there may be substantial grounds for differences of opinions. And, third, an immediate appeal would materially advance the ultimate termination of the litigation because an affirmative answer would bring the case to a close.

The Circuit Courts' case law is emergent, but it is undeniable that comity concerns run deepest when a foreign sovereign is involved and both cases are criminal cases involving the same operative facts. It is similarly evident that all seven factors above, distilled from tests used in applying these principles, favor dismissal in deference to international comity. Alvarado submits that Judge Hoyt's implicit ruling against international comity and abstention was in error. Alvarado requests this Court to either reconsider Judge Hoyt's ruling and grant his Motion to Dismiss or, in the alternative, to certify the question to the Fifth Circuit.

## CONCLUSION

Defendant Javier Alvarado Ochoa asks this Court to reverse Judge Hoyt's October 10, 2023, Order, to grant his motion, and to dismiss all counts pending against him with prejudice, or, in the alternative, to certify his proposed questions to the United States Court of Appeals for the Fifth Circuit.

Respectfully submitted,

GREGOR | WYNNE | ARNEY, PLLC

By: */s/ Michael J. Wynne*
Michael J. Wynne
Texas Bar No. 00785289
Cameron Powell*
DC Bar No. 00459020
4265 San Felipe, Suite 700
Houston, TX 77027
Telephone: (281) 450-7403
mwynne@gwafirm.com
cpowell@gwafirm.com

*Admitted Pro Hac Vice*

**COUNSEL FOR JAVIER ALVARADO OCHOA**

## CERTIFICATE OF CONFERENCE

I certify that I have conferred with counsel for the United States and that they are opposed to this motion.

By: */s/ Michael J. Wynne*
Michael J. Wynne

## CERTIFICATE OF SERVICE

I certify that on this 30th day of April 2024, I served a true and correct copy of the foregoing on all counsel of record by notice of electronic filing.

By: */s/ Michael J. Wynne*
Michael J. Wynne