**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. 4:17-CR-000514** |
| | § | |
| **JAVIER ALVARADO-OCHOA** | § | |
| | § | |
| | § | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR RECONSIDERATION**

In 2023, Judge Hoyt correctly denied Defendant Javier Alvarado-Ochoa's motion to dismiss the money laundering charges against him, rejecting Defendant's arguments that he may not be charged with committing money laundering crimes because he is a foreign national and was, at the time of the criminal conduct, a foreign official. DE 542. Defendant, who resides in Spain and still refuses to subject himself to this Court's jurisdiction, now asks this Court to expend further time and resources by reconsidering his properly denied motion to dismiss and issuing what would amount to an advisory opinion with no consequences for Defendant if he does not like the outcome. Defendant's motion does not warrant reconsideration, but even if it did, his motion should be denied because (1) the fugitive disentitlement doctrine applies, (2) the money laundering charges against him are proper, and (3) other proceedings in Spain do not warrant dismissal.

**PROCEDURAL HISTORY**

On April 24, 2019, a grand jury sitting in this District returned a Superseding Indictment charging Defendant with various money laundering offenses, including two counts of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Counts One and Thirteen), one substantive count of concealment money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i)

1

and 2 (Count Three), and three substantive counts of international promotional money laundering, in violation of 18 U.S.C. §§ 1956(a)(2)(A) and 2 (Counts Fifteen-Seventeen). DE 129.

The charges against Defendant arose from his role in a bribery and money laundering scheme whereby U.S.-based businessmen, Roberto Enrique Rincon Fernandez ("Rincon") and Abraham Jose Shiera Bastidas ("Shiera"), who have been charged separately, paid bribes to a group of Venezuelan officials and former Venezuelan officials—including Defendant (and co-defendants Nervis Villalobos Cárdenas, Alejandro Istúriz Chiesa, and Rafael Reiter Munoz, as well as Luis Carlos De Leon Perez and Cesar David Rincon Godoy)—in exchange for assistance in corruptly securing energy contracts from Petróleos de Venezuela, S.A. ("PDVSA") and its subsidiaries. PDVSA is Venezuela's state-owned oil and energy company, and at the time of the charged conduct, Defendant served as the President of Bariven, the procurement subsidiary of PDVSA. Co-defendants Daisy Rafoi Bleuler and Paulo Murta assisted Defendant, other Venezuelan officials and former officials, as well as a group of U.S.-based businessmen, in laundering and concealing the proceeds of their bribery scheme through the international financial system, including through banks in the United States and in Switzerland.

On April 29, 2019, an international arrest warrant was issued for Defendant on the Superseding Indictment. He was arrested in Spain on May 9, 2019, pursuant to the warrant. The government immediately sought Defendant's extradition; however, on December 16, 2019, a Spanish court denied the government's request for extradition. Defendant has not yet been arraigned on the Superseding Indictment, nor has he otherwise submitted to the jurisdiction of the Court.

On September 15, 2022, Defendant filed a motion to dismiss the Superseding Indictment, arguing, among other things, that the charges against him should be dismissed because he "is not

within the narrow scope of foreign persons subject to prosecution under the Foreign Corrupt Practices Act," and because foreign officials cannot be charged with FCPA violations or conspiracy to violate the FCPA. DE 363 at 1, 40. On March 15, 2023, the government responded, DE 393, and on April 19, 2023, Defendant replied, DE 424, rehashing his "foreign official" argument and adding an "international comity" argument for dismissal. On October 10, 2023, Judge Hoyt denied Defendant's motion to dismiss. DE 542.

On April 30, 2024, Defendant filed a Motion for Reconsideration and in the Alternative for Certification of Interlocutory Appeal, repeating his prior arguments regarding whether, as a foreign official, he can be charged with money laundering violations and arguing that "international comity" supports dismissal. DE 620.

## **LEGAL STANDARD**

"Although the Federal Rules of Criminal Procedure do not explicitly authorize motions for reconsideration, district courts possess continuing jurisdiction over criminal cases and are free to reconsider earlier decisions." *United States v. CITGO Petroleum Corp.*, 908 F. Supp. 2d 812, 820 (S.D. Tex. 2012). Because there is no "specific guidance from the Federal Rules of Criminal Procedure, courts should apply the standards set forth in the Federal Rules of Civil Procedure to motions for reconsideration." *Id.* (citing *United States v. Rollins*, 607 F.3d 500, 502 (7th Cir. 2010)). In the civil context, Rule 54(b) governs motions to reconsider interlocutory orders. *See United States v. E.I. Du Pont De Nemours & Co.*, 622 F. Supp. 3d 460, 467 (S.D. Tex. 2022) (using Rule 54(b) standard on a motion to reconsider order dismissing some, but not all, charges against a defendant).

Under the Rule 54(b) standard, "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change

in or clarification of the substantive law." *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). But "[t]he discretion to modify an interlocutory order does not eliminate the policy reasons behind discouraging motions for reconsideration which rehash the same arguments or, without justification, raise new arguments for the first time." *United States v. Mouton*, No. 4:20-CR-00501, 2024 WL 1545178, at *1 (S.D. Tex. Apr. 8, 2024) (internal quotation marks and citations omitted). "Accordingly, courts must exercise their broad discretion under Rule 54(b) sparingly to prevent the unnecessary reexamination of interlocutory orders with the resulting burdens, including expense and delay." *Id.* (internal quotation marks and citations omitted).

## ARGUMENT

### I.  Defendant's Motion Does Not Warrant Reconsideration.

Defendant's Motion to Reconsider repeats the arguments the Court already considered and necessarily rejected when it denied the Defendant's Motion to Dismiss. *See* DE 542 at 5 (acknowledging Defendant's argument that he was not a "covered person" under the FCPA).

In his Motion to Reconsider, Defendant repeats two arguments he made in his original Motion to Dismiss and Reply: (1) that because he was a foreign official not physically present in the United States during the relevant time period, he could not be charged with FCPA violations or for money laundering crimes; and (2) that because there is a pending investigation of Defendant in Spain, "international comity" requires dismissal of the charges against him in the United States. *See* DE 363 at 1, 40; DE 425 at 6, 13. Judge Hoyt was aware of those arguments when he denied Defendant's motion in 2023. In denying the motion, Judge Hoyt specifically addressed Defendant's argument that he could not be prosecuted for money laundering when he was not a U.S. citizen and never entered the country during the conspiracy, finding that argument foreclosed by the Fifth Circuit's decision in *United States v. Rafoi*, 60 F.4th 982, 998 (5th Cir. 2023). *Rafoi*

rejected similar arguments made by one of Defendant's co-defendants and reaffirmed that the money laundering statute applies extraterritorially, where a foreign citizen engages in money-laundering conduct that occurs in part in the United States, even where the foreign citizen is never physically present in the United States. *Id.* Although Judge Hoyt did not separately discuss Defendant's arguments regarding his "foreign official" status and "international comity," those arguments were fully briefed by Defendant and taken under advisement by the Court when it rejected his motion to dismiss.

Where a defendant simply repeats his previous arguments in a motion to reconsider, courts should decline to exercise their discretion to reconsider their earlier orders. *See United States v. Bruhl-Daniels*, 2020 WL 7632258, at *2 (S.D. Tex. Dec. 21, 2020) (declining to reconsider earlier order dismissing certain counts in an indictment because the motion "simply reasserted the same arguments that the court considered when it initially ruled"). This Court should decline to expend its time and resources addressing arguments Judge Hoyt already rejected.

## II.    The Fugitive Disentitlement Doctrine Applies.

At a more fundamental level, the Court should apply the fugitive disentitlement doctrine and decline to entertain Defendant's motions until Defendant submits himself to the Court's jurisdiction. The fugitive disentitlement doctrine is "an equitable one that a court exercises in its discretion." *Bright v. Holder*, 649 F.3d 397, 400 (5th Cir. 2011) (internal quotation marks and citation omitted).

The doctrine is justified by several rationales, including preventing the waste of judicial resources involved in issuing advisory opinions that a defendant living abroad may choose to ignore if he does not like the outcome. *See United States v. Herrera*, 534 F. Supp. 3d 727, 733 (S.D. Tex. 2021). The doctrine's "first and foremost . . . concern" is "the enforceability of [the

court's] decisions." *Martin v. Mukasey*, 517 F.3d 1201, 1204 (10th Cir. 2008). Indeed, courts have been hesitant to expend their time and resources to decide pretrial motions where an unfavorable ruling will have no effect on the defendant. *See United States v. Oliveri*, 190 F. Supp. 2d 933, 936 (S.D. Tex. 2001).

"A fugitive is someone who has been offered process and refuses it." *United States v. Shalhoub*, 855 F.3d 1255, 1264 (11th Cir. 2017) (citing Black's Law Dictionary (10th ed. 2014)); *see also United States v. Martirossian*, 917 F.3d 883, 890 (6th Cir. 2019) ("No one who is indicted and who declines to answer the charges has the right to be labeled a non-fugitive."). In the context of the fugitive disentitlement doctrine, courts have taken a broad view of the definition of a fugitive and have repeatedly held that a defendant who is outside the jurisdiction in which charges were brought may "constructively flee" by avoiding apprehension. *See, e.g.*, *Shalhoub*, 855 F.3d at 1263 (defendant who stayed in Saudi Arabia "to avoid apprehension" had constructively fled for the purposes of the fugitive disentitlement doctrine); *In re Kashamu*, 769 F.3d 490, 493 (7th Cir. 2014) (defendant who "didn't literally flee the United States, since he was never in the United States," was nonetheless "functionally" a fugitive). In this district, a defendant who "is aware of the charges pending against him . . . and is purposely absenting himself from the United States to avoid arrest and arraignment on the charges" is a fugitive. *Oliveri*, 190 F. Supp. 2d at 936 (citing *United States v. Catino*, 735 F.2d 718, 722 (2d Cir. 1984)). Indeed, "[a] defendant need not be present in and leave a jurisdiction to become a fugitive; the mere refusal to report for prosecution can constitute constructive flight." *Martirossian*, 917 F.3d at 890. And by contesting extradition to the United States to face charges, a defendant can show the requisite intent to avoid prosecution that courts have found sufficient to consider the defendant a fugitive. *See, e.g.*, *United States v. Vaulin*, No.

6

16 CR 438-1, 2017 WL 3334861, at *5 (N.D. Ill. Aug. 4, 2017) (applying fugitive disentitlement doctrine where defendant remained in Poland and was "actively resisting extradition efforts").[1]

Here, Defendant clearly falls within this broad definition of a fugitive. Defendant has been aware of the pending Superseding Indictment for years and has refused to submit to the jurisdiction of this Court. On April 26, 2019, an international arrest warrant was issued in this case and Defendant was subsequently arrested in Spain on May 9, 2019. The government then formally sought Defendant's extradition from Spain. During the extradition process, Defendant was served with the Superseding Indictment and was made aware of the nature of the government's case and the evidence against him. Defendant vehemently opposed the extradition, and on December 16, 2019, a Spanish court denied the government's extradition request. The basis for the denial of the extradition request was twofold – Defendant's recently acquired Spanish citizenship and a pending related, yet different, investigation in Spain. Since the denial of the government's extradition request, Defendant has remained in Spain, fully aware of the government's case, and has made no attempt to voluntarily submit himself to the jurisdiction of the Court.[2]

---

[1] This Court should decline to follow the Second Circuit's decision in *United States v. Bescond*, 24 F.4th 759 (2d Cir. 2021). There, the Court held that a person who lived in a country that would not extradite them was not a fugitive, and the Second Circuit's decision seemed to be motivated, in part, by the extraterritoriality concerns raised by the defendant in her motion to dismiss (there, with respect to the Commodity Exchange Act). *Id.* at 771-72. Here, Defendant's challenge to the extraterritorial application of the money laundering statute has been foreclosed by the Fifth Circuit's decision with respect to his co-defendants Rafoi and Murta – Defendant need not have taken any action in the United States as long as part of the money laundering conduct occurred in the United States. *United States v. Rafoi*, 60 F.4th 982, 998 (5th Cir. 2023).

[2] In Defendant's Reply in support of his original motion to dismiss, he states that he "has been ordered to surrender his passports to the Spanish government and is prohibited from traveling outside Spain." DE 425 at 15. But Defendant did not state (and has not stated) that he is willing to voluntarily travel to the United States to submit himself to this Court's jurisdiction and that, if he were given his passports, he would do so. Absent an indication of Defendant's willingness to travel to the United States to face the charges against him, the fugitive disentitlement doctrine should apply. *Cf. United States v. Starr*, No. 4:13-CR-385, 2024 WL 3652050, at *2 (N.D. Ohio

Courts have applied the fugitive disentitlement doctrine in similar circumstances where a defendant seeks to dismiss charges from abroad and where a foreign country refuses to extradite the defendant. *See, e.g.*, *Martirossian*, 917 F.3d at 885 (upholding application of the fugitive disentitlement doctrine to a motion to dismiss filed by a defendant charged with violations of the FCPA who, like Defendant, lived abroad in a country that would not extradite him); *Kashamu*, 769 F.3d at 493 (rejecting defendant's attempt to seek dismissal of indictment from abroad where defendant fought extradition and extradition was denied).

The rationales behind the fugitive disentitlement doctrine strongly support its application here. Defendant seeks to use this Court's processes as both a sword and a shield by attacking the indictment from afar without committing to accepting the consequences of a decision adverse to him. If Defendant ever comes to the United States, voluntarily or involuntarily, he would then be free to seek relief from this Court and, if denied, stand trial on the charges in the Superseding Indictment. *See Kashamu*, 769 F.3d at 492 ("An original indictment remains pending until it is dismissed or until double jeopardy or due process would forbid prosecution under it.") (quoting *United States v. Pacheco*, 912 F.2d 297, 305 (9th Cir. 1990)). If Defendant wishes to use more of the Court's time than he already has, he must "take the bitter with the sweet" and commit to accepting an adverse ruling. *Martirossian*, 917 F.3d at 889.

## III.   Defendant is Properly Charged with Money Laundering Violations.

Should this Court choose to address Defendant's arguments, those arguments fail on the merits. Defendant concedes in his motion to dismiss that 18 U.S.C. § 1956 is "the only statute under which Alvarado is charged." DE 363 at 1. The Court's analysis should begin and end there.

---

Aug. 5, 2024) (declining to apply fugitive disentitlement doctrine where defendant sought the government's help with traveling to the United States to voluntarily surrender after extradition was denied by the UAE).

None of Defendant's arguments about whether he could be charged with substantive violations of the FCPA apply here because ***Defendant is not charged with violating the FCPA***. He is charged with committing (and conspiring to commit) a separate crime—money laundering—that involved his abuse of the U.S. financial system through wire transfers that promoted FCPA violations by Rincon, Shiera, and others and sought to conceal proceeds from their bribery scheme. And the FCPA is a proper "specified unlawful activity" underlying Defendant's money laundering charges.

Defendant's Motion for Reconsideration argues at length that he cannot be charged with a substantive violation of the FCPA because he was a foreign official (and alleged bribe recipient) during the relevant time period. DE 620 at 5 (citing *United States v. Castle*, 925 F.2d 831 (5th Cir. 1991)). In particular, Defendant points to the recent enactment of the Foreign Extortion Prevention Act (FEPA) as further support for the notion that he cannot be charged with an FCPA violation. *Id.* at 9-14. All of those arguments are red herrings, because, as Defendant concedes, he is only charged with money laundering offenses—not with violating the FCPA.

To the extent Defendant argues that he cannot be charged with money laundering where the specified unlawful activity is a violation of the FCPA, abundant case law makes clear that a defendant need not commit (or even be capable of committing) the specified unlawful activity underlying a money laundering charge.

Money laundering is a separate crime and separate wrong from the specified unlawful activity underlying the conduct. *See United States v. Ho*, 984 F.3d 191, 202 (2d Cir. 2020) (explaining that "the money laundering statute takes dead aim at the attempt to launder dirty money, while leaving why and how that money got dirty to be defined in other statutes") (internal quotation marks and alterations omitted). It is well established that a defendant need not have committed the specified unlawful activity to be liable for money laundering activity associated

9

with the specified unlawful activity. *See United States v. Martinelli*, 454 F.3d 1300, 1312 (11th Cir. 2006) ("It is by now abundantly clear that in a money laundering case (or in a money laundering conspiracy case), the defendant need not actually commit the alleged specified unlawful activity."); *United States v. Cherry*, 330 F.3d 658, 667 (4th Cir. 2003) ("It is clear that a defendant may be convicted of money laundering even if she is not a party to, much less convicted of, the specified unlawful activity."); *see also United States v. Richard*, 234 F.3d 763, 768–69 (1st Cir. 2000) (affirming money laundering conviction where defendant had been acquitted on substantive charge, which was also the specified unlawful activity used to support the laundering charge, because laundering "does not require proof that the defendant committed the specified predicate offense, it merely requires proof that the monetary transaction constituted the proceeds of a predicate offense.").

That principle equally applies when the specified unlawful activity is a violation of the FCPA. Section 1956(c)(7)(D) includes "***any*** felony violation of the Foreign Corrupt Practices Act" as a "specified unlawful activity" in the money laundering statutes (emphasis added). A defendant charged with laundering money associated with an FCPA violation need not commit the FCPA violation or even be capable of committing such a violation by the terms of the statute. *See United States v. Bodmer*, 342 F. Supp. 2d 176 (S.D.N.Y. 2004) (considering and rejecting the same argument Defendant advances here and holding that the defendant there, a non-resident foreign national who could not, by the terms of the pre-1998 statute, commit a violation of the FCPA, could be convicted of laundering money with the intent to promote the violation).

In *Bodmer*, the defendant, who was a Swiss national acting on behalf of a domestic concern from outside the United States, argued that his conduct could not be prosecuted under the FCPA as it existed before 1998, when Congress amended the statute to make clear that foreign nationals

10

acting as agents of domestic concerns are subject to the FCPA's criminal penalties. *Id.* at 181. The court agreed, dismissing the portion of the indictment charging Bodmer with conspiracy to violate the FCPA. *Id.* at 189.

The court, however, rejected Bodmer's arguments for dismissal of the money laundering charges against him where the underlying unlawful activity was a violation of the FCPA. Like Defendant here, Bodmer argued "that pursuant to the *Gebardi* principle, he cannot be guilty of conspiring to launder money in furtherance of unlawful activity—a violation of the FCPA—where he cannot be guilty of the underlying unlawful activity." *Id.* at 189–90; *see* DE 620 at 18-21 (making the same argument). The court rejected that argument, starting with first principles: "The elements of a money laundering offense do not include, or even implicate, the capacity to commit the underlying unlawful activity." *Bodmer*, 342 F. Supp. 2d at 191. The court furthered reasoned:

> Whether Bodmer violated the FCPA, and the fact that he cannot be criminally sanctioned for that conduct, **is irrelevant** to proving that he transported money in furtherance of FCPA violations. Thus, the Government is not circumventing the FCPA's limitation on penalizing non-resident foreign nationals by charging Bodmer with money laundering."

*Id.* (emphasis added).

This result makes sense. As the *Bodmer* court explained, "[i]f immunity from the FCPA's criminal penalties automatically conferred non-resident foreign nationals with immunity from the money laundering statute, these non-resident foreign nationals could openly serve as professional money launderers of proceeds derived from violations of the FCPA, without repercussion," which "would contravene Congress's clearly articulated intention to include foreigners within the scope of the money laundering statute." *Id.*

Here, Defendant is charged with the distinct crime of money laundering to promote FCPA violations **by Rincon, Shiera, and others** and to conceal proceeds from those violations, which

serve as the "specified unlawful activity" in this case. Foreign officials, like Defendant, are routinely and validly charged with money laundering offenses where the specified unlawful activity is an FCPA violation related to bribery of the officials. *See, e.g.*, *United States v. Duperval*, 777 F.3d 1324, 1329 (11th Cir. 2015) (foreign official charged with money laundering and conspiracy to commit money laundering where the specified unlawful activity was a violation of the FCPA); ECF No. 44 (Superseding Indictment), *United States v. Diaz Guillen*, No. 9:18-cr-80160-WPD (S.D. Fl. Dec. 16, 2020) (same); ECF No. 35 (Superseding Indictment), *United States v. De Jongh-Atencio*, No. H-20-CR-305-S-1 (S.D. Tex. Dec. 16, 2020) (same); ECF No. 9 (Information), *United States v. Berkowitz*, No. 1:19-cr-00064-RJD (E.D.N.Y. Feb. 8, 2019) (foreign official charged with conspiracy to commit money laundering); ECF No. 98 (Superseding Information), *United States v. Mikerin*, No. 8:14-cr-00529-TDC (D. Md. Aug. 27, 2015) (same) .

Accordingly, because Defendant is not charged with violating the FCPA and the FCPA is a proper underlying unlawful activity for the money laundering charges, Defendant's arguments about the foreign official "exception" to the FCPA and the enactment of the Foreign Extortion Prevention Act are irrelevant and unavailing. To put it succinctly, although foreign officials who take bribes may not be prosecuted under the FCPA, they do not get a free pass to commit other federal crimes. Defendant is properly charged with using the U.S. financial system to launder criminal proceeds and promote criminal activity and the Court should decline to immunize him from the consequences of that conduct.

## IV. Other Proceedings in Spain Do Not Warrant Dismissal.

Defendant rehashes another argument he made to Judge Hoyt: that the indictment should be dismissed because Defendant is also being investigated for his criminal conduct by Spanish authorities. *See* DE 620 at 27-49; *see also* DE 425 (Defendant's Reply in Support of Motion to

Dismiss) at 13-17. Defendant fails to cite a single case that supports dismissal of an indictment under similar circumstances. Instead, Defendant cites a litany of civil cases that have no application in the criminal context.

The general rule in criminal cases is the dual sovereignty doctrine, under which "'prosecution by a foreign sovereign does not preclude the United States from bringing criminal charges.'" *Chua Han Mow v. United State*s, 730 F.2d 1308, 1313 (9th Cir. 1984) (quoting *United States v. Richardson*, 580 F.2d 946, 947 (9th Cir. 1978)); *United States v. Jeong*, 624 F.3d 706, 712 (5th Cir. 2010); *United States v. Martin*, 574 F.2d 1359, 1360 (5th Cir. 1978) ("The Constitution of the United States has not adopted the doctrine of international double jeopardy.").[3]

Although some extradition treaties include discussions of the principle of *non bis in idem* ("not twice for the same thing"), Defendant concedes that even where an extradition treaty discusses *non bis in idem* issues, those considerations only apply where a person "has been tried and discharged or punished in the territory of the requested Party for the offense for which his extradition is requested." DE 620 at 45. That is not the case here, where Defendant is under investigation and has not been tried in Spain.

Further, even assuming the U.S.-Spain extradition treaty's *non bis in idem* provisions applied to Defendant's case, the treaty would provide no basis for Defendant to challenge his prosecution in the United States. *See United States v. Garzon Londano*, No. S2 05 CR. 68 (CM),

---

[3] Defendant's citation to *United States v. Morton*, 314 F. Supp. 2d 509, 515 (D. Md. 2004), which discussed whether sexual abuse conduct in Germany took place within the special maritime or territorial jurisdiction of the United States is inapposite. Here, the extraterritorial reach of the money laundering statutes clearly provides jurisdiction. *Munaf v. Geren*, 553 U.S. 674 (2008), which Defendant relies on extensively and addressed whether an American citizen detained in military custody in Iraq could obtain habeas relief from a U.S court, is also entirely irrelevant to this case.

2008 WL 11422678, at *3 (S.D.N.Y. Feb. 19, 2008) ("A double jeopardy provision in an extradition treaty can impact the extraditing jurisdiction's decision of whether to extradite someone. But once extradition is granted, that provision cannot limit the receiving jurisdiction's prosecution of the extraditee.") (citing *United States v. Campbell*, 300 F.3d 202, 209-10 (2d Cir. 2002)). The Court should disregard Defendant's argument that it should prioritize an ongoing investigation in Spain over criminal charges brought by a grand jury in this district.

## V.    Defendant's Interlocutory Appeal Request Should Be Denied.

Defendant's motion for reconsideration also includes a puzzling request to certify three questions of law to the Fifth Circuit under 28 U.S.C. § 1292(b), which governs interlocutory appeals in *civil* cases. *See* DE 620 at 23-27, 48-49. Section 1292(b) and cases interpreting that statute have no application in the criminal context, where interlocutory appeals are permitted in only a few, limited circumstances. *United States v. Valencia*, 940 F.3d 181, 183 (5th Cir. 2019) ("The Supreme Court has . . . found denials of only three types of motions to be immediately appealable: motions to reduce bail, motions to dismiss on double jeopardy grounds, and motions to dismiss under the Speech or Debate Clause.") (internal quotation marks and citation omitted). As the Fifth Circuit has explained, "The collateral order doctrine is rarely applied in criminal cases, and is interpreted with the utmost strictness." *Id.* (internal quotation marks and citations omitted).

Here, a denial of Defendant's motion to dismiss would not qualify as a "final decision" permitting appellate jurisdiction under 28 U.S.C. § 1291 and does not fall within the small class of orders appealable under the collateral order doctrine. *See Valencia*, 940 F.3d at 183 (defendant's appeal of motion to dismiss indictment was not an appealable collateral order because it was not effectively unreviewable on appeal from a final judgment); *see also United States v. Tucker*, 745

F.3d 1054 (10th Cir. 2014) ("[V]ery few motions to dismiss an indictment—even if founded on a valid constitutional right—will give rise to interlocutory appellate jurisdiction.").

Defendant's request for certification of an interlocutory appeal should be denied.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that Defendant's motion for reconsideration be denied.

Respectfully submitted,

| | |
|---|---|
| LORINDA I. LARYEA | JOHN G.E. MARCK |
| CHIEF | ACTING U.S. ATTORNEY |
| Fraud Section | Southern District of Texas |
| Criminal Division | |
| United States Department of Justice | |
| | |
| */s/ Ligia Markman* | */s/ Robert S. Johnson* |
| LIGIA MARKMAN | ROBERT S. JOHNSON |
| TRIAL ATTORNEY | ASSISTANT UNITED STATES ATTORNEY |
| | |
| Fraud Section, Criminal Division | U.S. Attorney's Office |
| U.S. Department of Justice | Southern District of Texas |
| 1400 New York Avenue, N.W. | 1000 Louisiana, Ste. 2300 |
| Washington, D.C. 20530 | Houston, TX 77002 |
| Tel: (202) 794-2219 | Tel: (713) 567-9385 |

## CERTIFICATE OF SERVICE

I hereby certify that, on July 6, 2026, I filed the foregoing motion with the Clerk of the Court using the ECF/CM system for filing and service on all counsel of record.

*/s/ Ligia Markman*
Ligia Markman
Trial Attorney
Fraud Section, Criminal Division
U.S. Department of Justice

15