**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:17-CR-00514 |
| | § | |
| JAVIER ALVARADO-OCHOA | § | JUDGE DREW B. TIPTON |
| | § | |

**DEFENDANT JAVIER ALVARADO-OCHOA'S REPLY IN SUPPORT OF HIS MOTION FOR RECONSIDERATION AND, IN THE ALTERNATIVE, FOR CERTIFICATION OF INTERLOCUTORY APPEAL**

Defendant Javier Alvarado-Ochoa respectfully submits this Reply in support of his Motion for Reconsideration and, in the Alternative, for Certification of Interlocutory Appeal (DE 620), and in response to the Government's Response in Opposition (DE 697).

**INTRODUCTION**

The Government's Response is most remarkable for what it declines to do. It devotes its first eight pages to procedural deflection—"rehash," fugitive disentitlement—and reserves the question actually presented for its brief's closing pages. Arriving there at last, it dispatches the dispositive issue in a single sentence, waving away the Foreign Extortion Prevention Act ("FEPA") as a "red herring." DE 697 at 9. On the matters that decide this Motion, the Response says nothing: nothing about when Congress enacted FEPA—mere weeks after the very order Mr. Alvarado asks this Court to reconsider—nothing about why Congress enacted it, and nothing about the legislative record, in which Congress explained that existing law did not reach foreign officials who demand or accept bribes. That silence is not inadvertence; it is avoidance. The Government cannot discuss FEPA's enactment, its timing, or its history, because none of the three squares with its charging theory.

In December 2023, Congress confronted precisely the conduct alleged here: a foreign official who, the Government says, demanded and received bribes. Congress recognized that such an official stands outside the Foreign Corrupt Practices Act ("FCPA")—a gap the Fifth Circuit identified more than three decades ago in *United States v. Castle*, 925 F.2d 831 (5th Cir. 1991) (per curiam)—and Congress closed that gap the only way the Constitution permits: it enacted a new, prospective statute. If the Government were correct that a promotional money laundering charge predicated on the FCPA has always reached foreign-official bribe recipients for the very wires that carried the alleged bribes, FEPA was superfluous the day the President signed it. Congress does not legislate to close loopholes that do not exist. Congress holds the last word on its criminal statutes' meaning and reach, and its last word here confirms that no statute made the conduct alleged against Mr. Alvarado a crime chargeable against him when it allegedly occurred.

The Government's rejoinder—that Mr. Alvarado faces "only" money laundering charges, not FCPA charges—restates the problem rather than solving it. The money laundering counts rest on the FCPA as their "specified unlawful activity," and they target the alleged bribe recipient for the very transfers that, on the Government's telling, constitute his receipt of the bribes. Were that charging theory sound, the exception would swallow the rule: the Executive could prosecute, in every case, every foreign official Congress deliberately placed beyond the FCPA's definition of covered "persons," because bribes in international commerce invariably move by wire. *Castle* and *Gebardi* would become dead letters, and prosecutorial workaround would undo FEPA's carefully prospective design. That is not the law, and the Response never explains why it should become so.

## ARGUMENT

### I. This Motion Rests on an Intervening Act of Congress and on Dispositive Arguments the Prior Order Never Addressed. It Is Not a Rehash.

The Government's lead argument—that the Motion merely "repeats" what Judge Hoyt rejected—founders on the calendar alone. Briefing on the original motion to dismiss closed in April 2023. DE 424. Judge Hoyt denied the motion on October 10, 2023. DE 542. Congress enacted FEPA on December 22, 2023—*after* the order issued and *after* briefing closed.[1] Mr. Alvarado could not have presented FEPA to Judge Hoyt, and Judge Hoyt could not have considered it; the Government's studied refusal to engage that sequence is itself telling. An intervening act of Congress bearing directly on the charges is the paradigmatic ground to reconsider an interlocutory order—indeed, under Rule 54(b), this Court is "free to reconsider and reverse its decision for any reason it deems sufficient, *even in the absence of* new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (emphasis added). Here Congress supplied exactly such a change: new federal legislation addressed squarely to the class and the conduct at issue. Reconsideration follows *a fortiori*.

The Government's own Response supplies the second, independent ground. It concedes that "Judge Hoyt did not separately discuss Defendant's arguments regarding his 'foreign official' status and 'international comity.'" DE 697 at 5. The prior order addressed extraterritoriality under *United States v. Rafoi*, 60 F.4th 982 (5th Cir. 2023)—an argument about *where* § 1956 reaches. It never engaged the analytically distinct *Gebardi*/*Castle* argument about *whom* Congress placed

[1] Congress enacted FEPA on December 22, 2023, as Section 5101 of the National Defense Authorization Act for Fiscal Year 2024, Pub. L. No. 118-31, 137 Stat. 136, and recodified it at 18 U.S.C. § 1352 through the Foreign Extortion Prevention Technical Corrections Act, Pub. L. No. 118-78 (2024). The order Mr. Alvarado asks this Court to reconsider thus preceded FEPA's enactment by seventy-three days—an interval the Government's Response never acknowledges.

beyond the predicate statute's reach, and whether the Government may capture by indirection what Congress withheld directly. Where no order has ever analyzed a fully briefed, potentially dispositive legal argument—and where the case now stands before a different judge following reassignment—resolving that argument on the merits "rehashes" nothing. There is nothing to rehash: no court has ever spoken to the question. The concern animating *De Bruhl-Daniels*—relitigating matters a court actually decided—has no purchase here.

## II. The Government Buries—and Never Answers—the Dispositive Point: FEPA Confirms that Congress, Not the Executive's Charging Decisions, Defines Who May Be Prosecuted for Foreign Bribery.

### A. Castle and Gebardi: Congress's deliberate exclusion of foreign officials is a substantive policy choice that may not be evaded by creative charging.

*Castle* holds that the Government may not prosecute under the FCPA foreign officials who allegedly demand or receive bribes—and, critically, may not prosecute them for *conspiring* to violate the FCPA either. 925 F.2d at 831, 835–36 (adopting the district court's reasoning). The Fifth Circuit anchored that holding in *Gebardi v. United States*, 287 U.S. 112 (1932): where Congress affirmatively exempts a class of participants in a criminal transaction, the Government may not nullify that legislative judgment by charging the protected class under an ancillary theory reaching the same conduct. *Castle* recognized that Congress excluded foreign officials from the FCPA not by oversight but by considered policy choice—one grounded in diplomatic, sovereignty, and enforcement concerns—and that the Executive's charging decisions may not override it.

The Government does not dispute *Castle*. It cannot. It insists instead that the case is beside the point because the charges here invoke § 1956, not the FCPA itself. But that is exactly the maneuver *Gebardi* forbids. The *Gebardi* question is not the label the prosecutor affixes to the count; it is whether the ancillary charge punishes a member of the protected class for participating in the very transaction from which Congress exempted him. Here, the promotional money

laundering counts allege that Mr. Alvarado engaged in or caused wire transfers "with the intent to promote" FCPA violations—that is, bribe payments to Venezuelan officials, allegedly including himself—and the concealment count targets that same bribery's claimed proceeds. The § 1956 counts and the FCPA predicate describe a single transaction viewed from the recipient's side. Prosecuting the alleged recipient for "promoting" the payment made to him is a conspiracy-and-accomplice theory in money laundering dress. Nor does *Ocasio v. United States*, 578 U.S. 282 (2016), rescue the theory. *Ocasio* held only that the Hobbs Act—a statute the Supreme Court has long read to punish the bribe-taker himself—embodies no affirmative legislative policy shielding bribe payers, and so ordinary conspiracy principles governed; the decision reaffirmed, and did not narrow, *Gebardi*'s rule that where Congress has adopted such a policy, ancillary liability may not defeat it. The Second Circuit held exactly that when it applied *Gebardi* to the FCPA two years after *Ocasio*, *United States v. Hoskins*, 902 F.3d 69, 76 (2d Cir. 2018) (barring conspiracy and complicity charges against a defendant "incapable of committing" the FCPA offense "as a principal"), and Judge Lynch described *Castle* as "a classic application of the *Gebardi* principle to the FCPA." *Id.* at 101 (Lynch, J., concurring). The FCPA thus presents the very circumstance *Ocasio* found absent from the Hobbs Act: a deliberate congressional judgment to leave one participant—the foreign-official recipient—unpunished. *Castle* remains the binding law of this Circuit, before *Ocasio* and after it.

**B. FEPA is Congress's last word, and its enactment, timing, and legislative history foreclose the Government's theory.**

The Government dismisses FEPA in a single sentence and never engages the statute's enactment. DE 697 at 9. That enactment decides this Motion, and the Response's silence about it is the Response's most conspicuous feature. Since *Castle*, this Circuit has treated as settled that the FCPA criminalizes only foreign bribery's supply side: the payors. The demand side—foreign

officials who solicit or receive bribes—lay beyond the statute. Congress knew it; commentators had pressed the point for years. *See, e.g.*, Daniel T. Judge, *"Receiver Beware": How the Foreign Extortion Prevention Act Could Change the Foreign Corrupt Practices Act*, 2020 U. Ill. L. Rev. Online 152 (2020). FEPA's sponsors said it in terms: under existing law, "only the giving or offering of a bribe abroad is considered a criminal activity." Press Release, Off. of Sen. Sheldon Whitehouse, *Whitehouse, Tillis Applaud Senate Passage of Bipartisan Foreign Extortion Prevention Act* (July 31, 2023), https://www.whitehouse.senate.gov/news/release/whitehouse-tillis-applaud-senate-passage-of-bipartisan-foreign-extortion-prevention-act/. In December 2023, Congress acted: FEPA created, for the first time, a federal offense reaching foreign officials who corruptly demand, seek, receive, or accept bribes from American issuers, domestic concerns, or persons within the United States. 18 U.S.C. § 1352(b). Congress repeated that understanding when it perfected the statute the following year: Americans who paid bribes abroad had long faced prosecution, but "no corresponding law" reached the foreign officials who demanded or accepted them. 170 Cong. Rec. H4656 (daily ed. July 22, 2024). The sponsors hailed the result as "the most significant international criminal anti-corruption legislation in half a century." Press Release, Off. of Sen. Sheldon Whitehouse, *Bipartisan, Bicameral Foreign Extortion Prevention Act Signed into Law* (Dec. 26, 2023), https://www.whitehouse.senate.gov/news/release/bipartisan-bicameral-foreign-extortion-prevention-act-signed-into-law/ (statement of Rep. Sheila Jackson Lee). And Congress lodged the new offense in Title 18's general criminal code rather than amend the FCPA's roster of covered persons—confirmation that it created a new crime, not clarified an old one. The Government engages none of this: not the enactment, not the timing, not the legislative record. A response that cannot bring itself to discuss the statute at the Motion's center has no answer to it.

Two consequences follow, and the Government answers neither. *First*, FEPA is Congress's authoritative construction of the legal landscape it altered. Congress legislates against the backdrop of existing law, and "when Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Stone v. INS*, 514 U.S. 386, 397 (1995). If, as the Government contends, prosecutors could already reach foreign-official bribe recipients—because every bribe receipt in the modern financial system involves a wire, and every wire supports a promotional money laundering charge predicated on the FCPA—then FEPA accomplished nothing. On that view, the demand side needed no statute; the gap Congress announced it was closing did not exist. The Government's theory reduces an act of Congress to surplusage. The far more natural reading—the only reading that gives FEPA "real and substantial effect"—is that before December 22, 2023, no route existed to charge the protected class with the conduct FEPA criminalizes.

*Second*, Congress made FEPA prospective. It did not—and under the Ex Post Facto Clause could not—reach back to conduct predating enactment. The conduct alleged against Mr. Alvarado ended years before FEPA existed; the grand jury returned the Superseding Indictment in 2019. When Congress elects to criminalize previously unreachable conduct, and elects to do so only prospectively, the Executive may not manufacture retroactivity by recharacterizing identical pre-enactment conduct as money laundering. Congress alone defines federal crimes, *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34 (1812) (federal courts may not create common-law offenses; the legislative power defines them), and Congress's definition here is unambiguous: demand-side liability for foreign officials begins in December 2023—not in the Department of Justice's charging discretion, and not retroactively.

### C. On the Government's theory, the exception swallows the rule.

The Government's position suffers a structural defect: it leaves nothing of the rule *Castle* announced and FEPA presupposed. International bribes do not change hands in cash on a street corner; they move through the financial system, by wire, frequently through U.S. correspondent accounts—precisely the Government's U.S.-nexus theory here. If the alleged recipient's receipt of a wired bribe is itself "promotional" money laundering with the FCPA as the specified unlawful activity, the Executive may prosecute, in every case and for the same conduct, every foreign official Congress excluded from the FCPA—under penalties (twenty years per § 1956 count) that *exceed* the FCPA's own. The class Congress protected would enjoy no protection at all; the "exception"—charging § 1956 instead—would swallow the rule limiting liability for a foreign official who never entered the United States during the alleged scheme. A construction of two statutes that renders a deliberate congressional exclusion meaningless in every practical application is not a permissible construction. *See Gebardi*, 287 U.S. at 123 (declining to read the general conspiracy statute to erase Congress's definition of the punishable class); *Castle*, 925 F.2d at 836 (same as to the FCPA).

### D. The Government's authorities do not answer the argument.

*Bodmer* cannot bear the weight the Government assigns it. *United States v. Bodmer*, 342 F. Supp. 2d 176 (S.D.N.Y. 2004), is an out-of-circuit district court decision nineteen years older than FEPA; that court had no occasion to consider what the 2023 enactment reveals about the FCPA's deliberate exclusions. More fundamentally, Bodmer did not belong to the *Gebardi*-protected class. He was a Swiss *agent of a domestic concern*—a supply-side intermediary—within a category Congress had already resolved to reach, and one it expressly brought within the FCPA in the 1998 amendments. His temporary immunity reflected statutory timing, not a congressional

policy decision exempting his class. Foreign officials stand on entirely different footing: their exclusion, as *Castle* held, embodied a considered and continuing policy choice—one Congress reaffirmed in 2023 when it addressed the demand side through new, prospective legislation rather than amend the FCPA's roster of covered persons. *Bodmer*'s observation regarding "professional money launderers" is likewise inapposite: the indictment does not allege that Mr. Alvarado laundered third parties' FCPA proceeds as a service; it alleges that he received bribes—the very conduct Congress declined to criminalize until FEPA.

The Government's remaining citations establish only that the Department has charged foreign officials this way—not that any court has sustained the theory over a *Gebardi*/*Castle* objection informed by FEPA. *Duperval* did not decide the question; the indictments and informations the Government string-cites decided nothing at all. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511 (1925); *see also Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004). And *United States v. Ho*, 984 F.3d 191 (2d Cir. 2020), involved a defendant convicted of substantive FCPA violations—someone squarely within the statute's covered class—so no *Gebardi* question arose or could have arisen. Not one of the Government's authorities confronts the argument Mr. Alvarado actually advances, and none postdates—or so much as mentions—FEPA.

## III. The Fugitive Disentitlement Doctrine Does Not Apply to a Defendant Who Never Fled Anything.

The Government asks this Court to leave a pure legal question undecided because Mr. Alvarado—a Spanish citizen residing in Spain who never set foot in the United States in connection with the alleged conduct—remains at home. But disentitlement is a sanction "most severe," an instrument "too blunt" to deploy where lesser measures protect the court's authority,

and courts reserve it for genuine abuses of the judicial process. *Degen v. United States*, 517 U.S. 820, 828–29 (1996). Mr. Alvarado has abused nothing. Spanish authorities arrested him in May 2019 under the international warrant; he submitted to the Spanish judicial process; and a Spanish court—a coequal sovereign applying a treaty the United States negotiated and ratified—denied extradition on grounds including his Spanish citizenship and a pending Spanish investigation. He surrendered his passports by court order, and Spanish court orders forbid him to leave the country. DE 425 at 15. A man who cannot lawfully travel is not "refusing" process; he is obeying the only courts with authority over his person.[2]

The Second Circuit's decision in *United States v. Bescond*, 24 F.4th 759 (2d Cir. 2021), is squarely on point: a foreign citizen who remains at home in her own country—who never fled the United States and broke no law by staying where she has always lived—is not a fugitive, and disentitling her from challenging an extraterritorial indictment would be an abuse of discretion. The Government's sole answer is that extraterritoriality concerns "motivated" *Bescond*—concerns *Rafoi* resolved here. DE 697 at 7 n.1. That misses the point twice over. *Bescond*'s fugitivity holding did not depend on the underlying challenge's merits; and Mr. Alvarado's challenge is not the extraterritoriality argument *Rafoi* foreclosed—it is a *Gebardi*/*Castle* challenge, fortified by an act of Congress postdating *Rafoi* itself. The Government's cases, by contrast, involved defendants who fled or hid: *Shalhoub* remained abroad specifically "to avoid apprehension"; *Kashamu* litigated under an alias amid allegations that he concealed his identity; *Catino* involved actual flight. Mr. Alvarado, like Ms. Bescond, simply lives where he has every right to live, subject to travel restrictions his own country's courts imposed.

[2] The Government's footnote suggestion that Mr. Alvarado must first announce a willingness to travel to the United States inverts the analysis. The doctrine asks whether the defendant fled or concealed himself—not whether he has volunteered to waive the extradition protections both sovereigns bargained for by treaty. Mr. Alvarado submitted to that process; the requested state ruled. That is compliance with law, not flight from it.

The doctrine's core rationale—enforceability—is likewise absent. The Motion presents a pure legal question: the charges' facial validity. If the Court denies the Motion, the status quo persists and nothing requires enforcement against Mr. Alvarado; if the Court grants it, dismissal executes itself. No scenario lets Mr. Alvarado flout an adverse ruling: the indictment would remain pending against him, exactly as it stands today. Deciding the legal question now, moreover, serves judicial economy rather than squanders it—the same *Gebardi* question governs these charges' viability whenever and however Mr. Alvarado may appear, and it may bear on the parallel Spanish proceedings and any renewed extradition request. No equity supports refusing to answer a legal question Congress itself has now answered.

## IV. The Spanish Proceedings Reinforce, Rather than Undercut, the Case for Dismissal or Deference.

Mr. Alvarado has never contended that a Spanish investigation constitutionally bars a United States prosecution; the Government's dual-sovereignty and double-jeopardy discussion answers an argument no one made. The point sounds in prescriptive comity and prosecutorial reasonableness: Spain—Mr. Alvarado's country of citizenship and residence, and the requested state under the treaty—denied extradition in part *because* its own authorities are actively investigating the same underlying conduct. Maintaining charges Congress has now confirmed it never authorized against this class of defendant, in deference to no one, serves no legitimate enforcement interest the Spanish proceeding does not serve better. This Court need not resolve any comity question, however, if it reaches the *Gebardi*/FEPA question, which independently disposes of the charges.

## V. In the Alternative, the Court Should Facilitate Immediate Appellate Review.

If the Court denies reconsideration, Mr. Alvarado maintains his alternative request. Whatever the precise vehicle, the question presented—whether the Government may maintain § 1956 charges predicated on the FCPA against a member of the class Congress excluded from the FCPA and addressed only prospectively in FEPA—is a pure, controlling question of law, one of first impression in this Circuit after FEPA, one on which reasonable jurists can differ, and one whose resolution would materially advance this eight-year-old case. At a minimum, Mr. Alvarado respectfully requests that any order denying relief address the *Gebardi*/*Castle*/FEPA question expressly, preserving and framing the issue for whatever review later becomes available.

## CONCLUSION

The Government waited until its brief's final pages to reach the merits, and once there it said nothing about FEPA's enactment, nothing about the timing that placed that enactment squarely after the order under review, and nothing about the legislative record in which Congress announced that it was criminalizing—for the first time, and only prospectively—the very conduct charged here. Congress has the last word on its criminal statutes' reach. Its last word confirms that the theory underlying every count against Mr. Alvarado—demand-side liability for a foreign official, achieved through the money laundering statute—did not exist when the alleged conduct occurred, and that indulging it would let the exception swallow the rule. The Court should grant reconsideration and dismiss the Superseding Indictment as to Mr. Alvarado or, in the alternative, certify the question for interlocutory review.

Dated: July 13, 2026

Respectfully submitted,

By: */s/ Michael J. Wynne*
Michael J. Wynne
TX Bar No. 00785289
SDTX No. 0018569
Cameron Powell*
DC Bar. No. 00459020
GREGOR WYNNE ARNEY, PLLC
4265 San Felipe, Suite 700
Houston, Texas 77027
Telephone: (281) 450-7403
mwynne@gwafirm.com
cpowell@gwafirm.com

**Admitted Pro Hac Vice*

COUNSEL FOR DEFENDANT
JAVIER ALVARADO-OCHOA

**CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

By: */s/ Michael J. Wynne*
Michael J. Wynne